DUPLANTIER FAMILY PARTNERSHIP, ET AL.
v.
BP AMOCO, ET AL.
No. 2007-C-0293.
Court of Appeal of Louisiana.
May 16, 2007.
NOT DESIGNATED FOR PUBLICATION.
DONALD T. CARMOUCHE, JOHN H. CARMOUCHE, BRIAN T. CARMOUCHE, VICTOR L. MARCELLO, WILLIAM R. COENEN, III, KENNETH JAY DeLOUCHE, TALBOT, CARMOUCHE & MARCELLO, and JASON ROGERS WILLIAMS, and KENNETH M. CARTER, KENNETH M. CARTER, PLC, and JOHN S. DuPONT, III, LAW OFFICE OF JOHN S. DUPONT, III, L.L.C., Counsel for DuPlantier Family Partnership, the Kelley Land Company, and Erin DuPont as the Duly-Appointed Administratrix of the succession of Jane DuPlantier Kelley.
THOMAS M. McNAMARA, PATRICK W. GRAY Amy A. ALLUMS, JOHNSON, GRAY, MCNAMARA, LLC, and GEORGE ARCENEAUX, III, LISKOW & LEWIS, Counsel for BP American Production Company.
ROBERT B. McNEAL, MARK L. McNAMARA, ANUNDRA M. DILLON, LISKOW & LEWIS, Counsel for Exxon Mobil Corporation and Mobil Oil Exploration & Producing Southeast, Inc.
GLENN G. GOODIER, WAYNE G. ZERINGUE, Jr., JONES WALKER WAECHTER POITEVENT CARRERE & DENEGRE, L.L.P., Counsel for Ashland Oil, Inc. (Now Known as Ashland, Inc.) and Ashland Exploration Holdings, Inc. (Now Known as FRJ, INC.)
Court composed of Judge JONES, Judge McKAY, III, Judge BAGNERIS, Sr., Judge GORBATY and Judge CANNIZZARO, Jr.
DENNIS R. BAGNERIS, Sr. Judge.
Plaintiffs seek review of the trial court's judgment granting the defendants' motion to revise the case management order in regards to Acts 2006, No.312.
The plaintiffs instituted the present action seeking reimbursement for damages sustained to their property from various oilfield operators, lessees and servitude owners arising out of oil and gas exploration and production operations. Plaintiffs filed suit on November 21, 2000. The trial court signed a case management order on April 3, 2006. A jury trial is presently set for July 23-27, 2007.
During the 2006 regular legislative session, the Louisiana Legislature enacted La. R.S. 30:29 (Acts 2006, No. 312). The statute became effective on the date the governor signed the bill, i.e., June 8, 2006. The statute provided for procedures to be incorporated in oilfield remediation cases to insure that the damaged property would be adequately remediated to protect the public. Thereafter, the defendants filed a motion to revise the case management order to incorporate the requirements of La. R.S. 30:29 into the case management order.
After a hearing on January 5, 2007, the trial court rendered a written judgment on February 6, 2007, granting the defendants' motion. After Plaintiffs' motion for reconsideration was denied, they filed this application for supervisory writs.

DISCUSSION
Plaintiffs argue that the trial court erred when it granted defendants' motion to revise the case management order and accepted defendants' interpretation of La. R. S. 30:29 to require two separate trials, one for establishing the existence of environmental damage and liability therefore, and one for all other contractual and/or tort claims. Plaintiffs argue that there should only be one trial as the two separate trials would result in piecemeal litigation and be inefficient.
La. R.S. 30:29 provides:
A. The legislature hereby finds and declares that Article IX, Section 1 of the Constitution of Louisiana mandates that the natural resources and the environment of the state, including ground water, are to be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy. It is the duty of the legislature to set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest. To this end, this Section provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the Department of Natural Resources, office of conservation. The provisions of this Section shall be implemented upon receipt of timely notice as required by Paragraph (B)(1) of this Section. The provisions of this Section shall not be construed to impede or limit provisions under private contracts imposing remediation obligations in excess of the requirements of the department or limit the right of a party to a private contract to enforce any contract provision in a court of proper jurisdiction.
B. (1) Notwithstanding any law to the contrary, immediately upon the filing or amendment of any litigation or pleading making a judicial demand arising from or alleging environmental damage, the provisions of this Section shall apply and the party filing same shall provide timely notice to the state of Louisiana through the Department of Natural Resources, commissioner of conservation and the attorney general. The litigation shall be stayed with respect to any such judicial demand until thirty days after such notice is issued and return receipt is filed with the court.
(2) The department or the attorney general, in accordance with their areas of constitutional and statutory authority and regulations adopted pursuant thereto, shall have the right to intervene in such litigation in accordance with the Louisiana Code of Civil Procedure. Nothing in this Section shall diminish the authority of the department or the attorney general to independently bring any civil or administrative enforcement action. Nor shall anything in this Section preclude the department from independently responding in a timely manner to an inquiry or request by a landowner for investigation.
(3) Any judgment or order in any litigation to which this Section applies shall be without prejudice to any independent civil or administrative action by the department or the attorney general regarding any environmental damage alleged therein. No such judgment or order in such litigation may bar the department or the attorney general pursuant to R.S. 13:4231 et seq., or otherwise from pursuing any independent civil or administrative action regarding environmental damage alleged therein, regardless of whether the department or the attorney general has intervened.
(4) No judgment or order shall be rendered granting any relief in such litigation to which this Section applies, nor shall the litigation be dismissed, until timely notice is received by the state of Louisiana as set forth in this Subsection.
C. (1) If at any time during the proceeding a party admits liability for environmental damage or the finder of fact determines that environmental damage exists and determines the party or parties who caused the damage or who are otherwise legally responsible therefore, the court shall order the party or parties who admit responsibility or whom the court finds legally responsible for the damage to develop a plan or submittal for the evaluation or remediation to applicable standards of the contamination that resulted in the environmental damage. The court shall order that the plan be developed and submitted to the department and the court within a time that the court determines is reasonable and shall allow the plaintiff or any other party at least thirty days from the date each plan or submittal was made to the department and the court to review the plan or submittal and provide to the department and the court a plan, comment, or input in response thereto. The department shall consider any plan, comment, or response provided timely by any party. The department shall submit to the court a schedule of estimated costs for review of the plans or submittals of the parties by the department and the court shall require the party admitting responsibility or the party found legally responsible by the court to deposit in the registry of the court sufficient funds to pay the cost of the department's review of the plans or submittals. Any plan or submittal shall include an estimation of cost to implement the plan.
(2) Within sixty days from the last day on which any party may provide the department with a plan, comment, or response to a plan as provided in Paragraph (C)(1) of this Section, the department shall conduct a public hearing on the plan or plans submitted. Within sixty days of the conclusion of the hearing, the department shall approve or structure a plan based on the evidence submitted which the department determines to be the most feasible plan to evaluate or remediate the environmental damage and protect the health, safety, and welfare of the people. The department shall issue written reasons for the plan it approves or structures. On motion of the department, for good cause shown, the court may grant the department additional time, not to exceed sixty days, within which to either conduct the hearing or approve a plan with reasons.
(3) The department shall use and apply the applicable standards in approving or structuring a plan that the department determines to be the most feasible plan to evaluate or remediate the environmental damage.
(4) The plan approved by the department for submission to the court shall not be considered to be an adjudication subject to appellate review pursuant to R.S. 49:964 or R.S. 30:12.
(5) The court shall adopt the plan approved by the department, unless a party proves by a preponderance of the evidence that another plan is a more feasible plan to adequately protect the environment and the public health, safety, and welfare. The court shall enter a judgment adopting a plan with written reasons assigned. Upon adoption of a plan, the court shall order the party or parties admitting responsibility or the party or parties found legally responsible by the court to fund the implementation of the plan.
(6)(a) Any judgment adopting a plan of evaluation or remediation pursuant to this Section and ordering the party or parties admitting responsibility or the party or parties found legally responsible by the court to deposit funds for the implementation thereof into the registry of the court pursuant to this Section shall be considered a final judgment pursuant to the Code of Civil Procedure Article 2081 et seq., for purposes of appeal.
(b) Any appeal under this Section shall be a de novo review and shall be heard with preference and on an expedited basis.
(c) The appellate court may affirm the trial court's adoption of a plan or may adopt a feasible plan in conformity with this Section and shall issue written reasons for its decision.
D. (1) Whether or not the department or the attorney general intervenes, and except as provided in Subsection H of this Section, all damages or payments in any civil action, including interest thereon, awarded for the evaluation or remediation of environmental damage shall be paid exclusively into the registry of the court in an interest-bearing account with the interest accruing to the account for clean up.
(2) The court may allow any funds to be paid into the registry of the court to be paid in increments as necessary to fund the evaluation or remediation and implementation of any plan or submittal adopted by the court. In any instance in which the court allows the funds to be paid in increments, whether or not an appeal is taken, the court shall require the posting of a bond for the implementation of the plan in such amount as provided by and in accordance with the procedures set forth for the posting of suspensive appeal bonds. Any such bond shall be valid through completion of the remediation.
(3) The court shall issue such orders as may be necessary to ensure that any such funds are actually expended in a manner consistent with the adopted plan for the evaluation or remediation of the environmental damage for which the award or payment is made.
(4) The court shall retain jurisdiction over the funds deposited and the party or parties admitting responsibility or the party or parties found legally responsible by the court until such time as the evaluation or remediation is completed. If the court finds the amount of the initial deposit insufficient to complete the evaluation or remediation, the court shall, on the motion of any party or on its own motion, order the party or parties admitting responsibility or found legally responsible by the court to deposit additional funds into the registry of the court. Upon completion of the evaluation or remediation, the court shall order any funds remaining in the registry of the court to be returned to the depositor. The department and the parties shall notify the court of the completion of any evaluation or remediation.
E. (1) In any civil action in which a party is responsible for damages or payments for the evaluation or remediation of environmental damage, a party providing evidence, in whole or in part, upon which the judgment is based shall be entitled to recover from the party or parties admitting responsibility or the party or parties found legally responsible by the court, in addition to any other amounts to which the party may be entitled, all costs attributable to producing that portion of the evidence that directly relates to the establishment of environmental damage, including, but not limited to, expert witness fees, environmental evaluation, investigation, and testing, the cost of developing a plan of remediation, and reasonable attorney fees incurred in the trial court and the department.
(2) In any civil action in which the department or the attorney general, or their employees, are parties or witnesses, provide evidence, or otherwise contribute to the determination of responsibility for evaluation or remediation, or the approval of a plan of remediation, the department or attorney general shall be entitled to recover from the party or parties admitting responsibility or the party or parties found legally responsible by the court all costs thereof, including but not limited to investigation, evaluation, and review costs; expert witness fees; and reasonable attorney fees.
F. The court and the department shall retain oversight to ensure compliance with the plan. The party or parties admitting responsibility or the party or parties found legally responsible by the court shall file progress reports periodically as the court or the department may require.
G. The provisions of this Section are intended to ensure evaluation or remediation of environmental damage. If the court finds that no environmental damage exists, the court may dismiss the department or attorney general from the litigation without prejudice.
H. This Section shall not preclude an owner of land from pursuing a judicial remedy or receiving a judicial award for private claims suffered as a result of environmental damage, except as otherwise provided in this Section. Nor shall it preclude a judgment ordering damages for or implementation of additional remediation in excess of the requirements of the plan adopted by the court pursuant to this Section as may be required in accordance with the terms of an express contractual provision. Any award granted in connection with the judgment for additional remediation is not required to be paid into the registry of the court. This Section shall not be interpreted to create any cause of action or to impose additional implied obligations under the mineral code or arising out of a mineral lease.
I. For the purposes of this Section, the following terms shall have the following meanings:
(1) "Environmental damage" shall mean any actual or potential impact, damage, or injury to environmental media caused by contamination resulting from activities associated with oilfield sites or exploration and production sites. Environmental media shall include but not be limited to soil, surface water, ground water, or sediment.
(2) "Evaluation or remediation" shall include but not be limited to investigation, testing, monitoring, containment, prevention, or abatement.
(3) "Feasible Plan" means the most reasonable plan which addresses environmental damage in conformity with the requirements of Louisiana Constitution Article IX, Section 1 to protect the environment, public health, safety and welfare, and is in compliance with the specific relevant and applicable standards and regulations promulgated by a state agency in accordance with the Administrative Procedure Act in effect at the time of clean up to remediate contamination resulting from oilfield or exploration and production operations or waste.
(4) "Oilfield site" or "exploration and production (E&P) site" means any location or any portion thereof on which oil or gas exploration, development, or production activities have occurred, including wells, equipment, tanks, flow lines or impoundments used for the purposes of the drilling, workover, production, primary separation, disposal, transportation or storage of E&P wastes, crude oil and natural gas processing, transportation or storage of a common production stream of crude oil, natural gas, coal seam natural gas, or geothermal energy prior to a custody transfer or a sales point. In general, this definition would apply to all exploration and production operations located on the same lease, unit or field.
(5) "Timely notice" means written notice sent by certified mail, return receipt requested. Such notice shall include a copy of the petition and any other filing in such litigation.
J. (1) In the event that any settlement is reached in a case subject to the provisions of this Section, the settlement shall be subject to approval by the court. The department and the attorney general shall be given notice once the parties have reached a settlement in principle. The department shall then have no less than thirty days to review that settlement and comment to the court before the court certifies the settlement. If after a contradictory hearing the court requires remediation, the court shall not certify or approve any settlement until an amount of money sufficient to fund such remediation is deposited into the registry of the court. No funding of a settlement shall occur until the requirements of this Section have been satisfied. However, the court shall have the discretion to waive the requirements of this Section if the settlement reached is for a minimal amount and is not dispositive of the entire litigation.
(2) In the event a settlement is agreed to between the parties in a case in which the department or the attorney general has intervened, such agency shall be entitled to recover from the settling defendants all costs, including investigation, evaluation, and review costs; expert witness fees; and reasonable attorney fees.
K. The provisions of this Section shall not apply to a judicial demand that prior to the effective date of this Section has been resolved through compromise agreement and settlement of claims, or by judgment on the merits that has become final and definitive. (Emphasis added.)
According to the defendants, the statute should be read to require two trials. They argued, and the trial court agreed, that there must first be a determination of the existence of environmental damage and the liability for the damage. Then, the parties submit their plans for remediation to the Department of Conservation. A second trial on all other issues would occur after all issues related to the remediation plan have been resolved.
Plaintiffs contend that there is no need for two trials. They suggest that two separate trials could result in conflicting judgments and conflicting rulings on appeal. Plaintiffs argue that there should be one trial on all claims and issues, after which the parties would submit their plans for remediation to the Department of Conservation.
As the statute is fairly new, there is no jurisprudence to guide the courts on the interpretation of the statute. It can be determined from the legislative history that the statute was intended to insure that funds awarded by the courts for damages to property would actually be used to remediate the property. The Louisiana Supreme Court has recognized that while the legislature has taken an active interest in the remediation of property affected by oilfield contamination, it has not limited a person's private right of action for damages in such cases.
In recent years, the legislature has addressed the issue of oilfield contamination on several occasions. In 1993, the legislature enacted the Louisiana Oilfield Site Restoration Law, La. R.S. 30:80 et seq. The legislature found and declared that "a present and future benefit to the environment, public health, safety, and welfare would be to clean up, close, and restore oilfield sites." La. R.S. 30:81(a)(1). The legislature further declared state laws and regulations must comprehensively address those situations where proper and timely cleanup, closures, and restoration of orphaned oilfield sites must be assured. La. R.S. 30:81(A)(2).
While recognizing the need for a comprehensive body of legislation wherein the state would oversee the problem of oilfield waste sites, we note that the legislature was careful not to take away a private landowner's right to seek redress against oil companies. The legislature did not expressly take away nor do we believe that it intended to take away this right from private landowners. Instead, we find that it preserved a private landowner's right to seek redress. La. R.S. 30:81(C) states: "[n]othing in this part shall be deemed to alter or impair any rights and responsibilities established by contract between private parties." When the legislature later addressed the possibility of double payment for cleanups by oil companiesonce to the landowner and again to the regulatorthe legislature again preserved the landowners' right to sue, but gave the oil companies a "credit" for amounts paid to the landowner in a subsequent enforcement action by the Office of Conservation. La. R.S. 30:89.1.
Corbello v. Iowa Production, XXXX-XXXX, pp. 16-17 (La. 2/25/03), 850 So.2d 686, 699.
In Corbello, the Supreme Court also recognized that a landowner's recovery for remediation may not be limited to tort damages. The Court stated:
We find that the contractual terms of a contract, which convey the intentions of the parties, overrule any policy considerations behind such a rule limiting damages in tort cases. We recognize that in some cases, as in the instant case, the expense of restoration of immovable property can be extremely high. However, while we find it logical in tort cases to tether the amount of damages by balancing the amount to be paid by the negligent tortfeasor against the goal to restore the plaintiff, as closely as possible, to the position which he would have occupied had the accident never occurred, this same logic should not be extended to breach of contract cases.
The measure of damages in breach of contract cases is governed by the four corners of the contract. In this case, Shell, a sophisticated company with vast experience in negotiating oil and gas contracts, bound itself by contract to "reasonably restore plaintiffs' property as near as possible to its current condition." Shell must not be allowed to now alter the terms of this contract by limiting its liability to an amount reasonably or rationally related to the market value of the property.
Corbello, pp. 8-9, 850 So.2d 694-695.
The dicta in Corbello suggests that all claims, both tort and contractual, should be considered at the same time in order to determine the full extent of damages owed to the property owner.
In addition, if the concept of judicial efficiency and avoidance of piecemeal litigation were to be maintained, then one trial of all issues would be the most plausible interpretation of the statute. As noted by the plaintiffs, bifurcated trials are only allowed under the Louisiana Code of Civil Procedure when there is consent of all parties. See La. C.C.P. articles 1562(A), 1736. Further, if defendants' interpretation were accepted, then there would be two juries, two trials, and at least two appeals, all which could result in conflicting rulings.
This court understands the concerns of the defendants about confusion of the claims but their concerns could be handled with specific jury interrogatories on the different claims pled by the plaintiffs. In addition, defendants' claims that the statute requires an expedited decision on the existence of environmental damage are misplaced. The statute states "If at any time during the proceeding a party admits liability for environmental damage or the finder of fact determines that environmental damage exists . . ." Thus, the determination of environmental damage may occur at any time during the litigation. In addition, if a party does not admit liability, a "fact-finder", i.e. jury or judge, may find that environmental damages exist. Such a determination could only be had after a trial on the merits.
This court does not find that the statute mandates two trials, and we do not find any benefit to having two trials. Accordingly, we hereby grant the writ application and reverse the trial court judgment.
WRIT GRANTED; JUDGMENT OF THE TRIAL COURT REVERSED