998 So.2d 16 (2008)
M.J. FARMS, LTD.
v.
EXXON MOBIL CORPORATION, et al.
No. 2007-CA-2371.
Supreme Court of Louisiana.
July 1, 2008.
Order on Rehearing September 19, 2008.
*19 James D. Caldwell, Attorney General, Ryan Michael Seidemann, Megan Kathleen Terrell, Assistant Attorneys General; Liskow & Lewis, PLC, Katherine Miller Determan, Robert Beattie McNeal, Carey Lyon Menasco, Anundra Martin Dillon, Mark LeRay McNamara, New Orleans; Krebs, Farley & Pelleteri, Matthew Joseph Farley, Elizabeth S. Sconzert, Thomas Matthew Beh, New Orleans; Gordon, Arata, McCollam, Duplantis & Egan, Sara Emily Mouledoux, Loulan Joseph Pitre, Jr., New Orleans, Matthew Joseph Randazzo, III, Lafayette, Aimee Williams Hebert, *20 Abaigeal Lynn Van Deerlin, Michelle Chavonne Purchner, New Orleans, for Appellant.
Dupuy & Didier, Marc Dupuy, Jr., Marksville; Bice, Palermo & Veron, John Michael Veron, Alonzo P. Wilson, Lake Charles; Blanchard, Walker, O'Quin, & Roberts, William Timothy Allen, III, Paul M. Adkins, Shreveport; Davidson, Meaux, Sonnier & McGelligott, James J. Davidson, III, Christopher Joseph Piasecki, Lafayette; Mangham & Associates, L.L.C., Michael R. Mangham, Lafayette; Smith, Taliaferrro, Purvis & Boothe, Virgil Russell Purvis, Jr., Jonesville; Wall & Bullington, Guy Earl Wall, Paul Edward Bullington, Jonathan Robert Cook, New Orleans, for Appellee.
Alex L. Andrus, III, and James T. Guglielmo, Opelousas, for Four Rivers Exploration, Inc., Amicus Curiae.
G. William Jarman and Linda Sarradet Akchin, Baton Rouge, for Louisiana Oil and Gas Association and Louisiana Med-Continent Oil and Gas Association, Amicus Curiae.
Thomas Martin McNamara, Patrick Wise Gray and Amy Elizabeth Allums Lee, for Shell Oil Co., Amicus Curiae.
KNOLL, Justice.[*]
This matter arises from the plaintiff's constitutional challenge to Act 312 of 2006 ("Act 312"), a legislative enactment related to litigation claiming environmental damages arising from oilfield operations. The case is before us on direct appeal from a judgment by the district court declaring 2006 La. Acts 312, unconstitutional on the grounds that it violated La. Const. art. V, § 16 (divestiture of the district courts of original jurisdiction), the Fifth Amendment of the United States Constitution (the deprivation of a landowner of his property without due process), and La. Const. art. I, § 4 (divestiture of the landowner's right to acquire, own, control, use, enjoy, protect and dispose of private property). After reviewing the record, 2006 La. Acts 312, and the constitutional provisions at issue, we conclude the district court erred in finding Act 312 of 2006 unconstitutional. Accordingly, we reverse the judgment of the district court, and remand this matter to the district court for further proceedings consistent with the views expressed herein.

FACTS AND PROCEDURAL HISTORY
In 2005, M.J. Farms, Ltd. ("M.J. Farms") purchased approximately 42,000 acres located in Catahoula and Avoyelles Parishes.[1] M.J. Farms' purchase was made subject to various mineral reservations and pre-existing oil and gas leases. M.J. Farms was strictly a surface owner, having no mineral rights to the purchased property.
On April 25, 2006, M.J. Farms filed the present suit against numerous defendants,[2] including Exxon Mobil Corporation ("Exxon"), Wagner Oil Company ("Wagner") and Benedict Corporation ("Benedict"). Essentially, M.J. Farms alleged defendants caused environmental damages to *21 the property when they conducted oil and gas exploration and production activities, causing the surface, subsurface, ground waters and subsurface aquifers to be contaminated with oil, grease, radioactive materials, toxic heavy metals and other hazardous chemicals. M.J. Farms asserted multiple causes of action: breach of contract, negligence, strict liability, trespass, nuisance, and unjust enrichment. M.J. Farms further particularized a claim for restoration of its property as provided in La.Rev.Stat. § 31:22,[3] La. Civ.Code art. 2683 (duty of the lessee to return the thing in the same condition), and La. Civ.Code art. 2692 (duty to repair the damage for excessive use). M.J. Farms sought damages for the costs of containment, clean-up, remediation and restoration of the surface to its original condition, exemplary damages under La. Civ.Code art. 2315.3,[4] as well as costs of the action and attorneys' fees, and for the loss of civil fruits (such as loss of income due to crops losses).
While this suit was pending, the Louisiana Legislature passed Act 312. Act 312 amended and reenacted La.Rev.Stat. §§ 30:82(6) (defining "producing oilfield site" or "exploration and production site"), 89.1 (providing for credits for judgments or compromises for the remediation of oilfield sites and exploration and production sites) and 2015.1(B), (C)(1), (2), and (4), (D), (E)(1), (F)(2), (H), (I), and (K) (provisions applicable to the remediation of usable ground water) and enacted La. Rev. Stat §§ 30:29 (providing procedures for the remediation of oilfield sites and exploration and production sites), 29.1 (providing for landowner notification of environmental testing), and 2015.1(L) (reiterating that the provisions for the remediation of usable ground water is inapplicable to oilfield sites or exploration and production sites).
Act 312 became effective on June 8, 2006. Section 3 of the Act 312 contains a clause, providing that the Act "shall not apply to any case in which the court on or before March 27, 2006, has issued or signed an order setting the case for trial, regardless of whether such trial setting is continued." M.J. Farms filed the present suit prior to the effective date of Act 312, but after March 27, 2006. Thus, as of March 27, 2006, there was no order yet signed setting the present case for trial.
Thereafter, Wagner and several other defendants filed a "Motion to Enforce Stay Provision of Act 312 or Alternatively to Extend Time in Which to File Responsive Pleadings." Defendants argued M.J. Farms failed to provide proper notice to both LDNR and the Attorney General. Therefore, they requested the trial court to stay the proceedings until 30 days after the Attorney General has been notified as provided by Section 1 of Act 312 of 2006, codified under La.Rev.Stat. § 30:29(B).
Additionally, Exxon and some other defendants concurrently filed exceptions of prematurity, asserting M.J. Farms failed to exhaust its administrative remedies *22 under Act 312, which requires plaintiff to give notice of its claims to LDNR and the Louisiana Department of Environmental Quality ("LDEQ"). Accordingly, defendants requested the case be dismissed or stayed pending referral to the above-mentioned agencies for review and determination.[5] Alternatively, Exxon filed an "exception of lack of subject matter jurisdiction based upon the doctrine of primary jurisdiction."[6] Exxon argued Act 312 grants primary jurisdiction in claims for environmental damage to the Commissioner of Conservation of LDNR and requested the trial court to dismiss the action and refer the matter to LDNR for adjudication.
M.J. Farms opposed defendants' motions and exceptions. It first argued Act 312 was inapplicable to the present litigation because the Act seeks to amend and enact only provisions of Title 30, while plaintiff asserted claims under Title 31 and under the Civil Code. Notwithstanding, M.J. Farms indicated it provided notices to LDNR and LDEQ at the time it filed this action under the form and procedure prescribed by the law in effect at that time. M.J. Farms further asserted it did not provide such notice to the Attorney General because the law prior to Act 312 did not require such notice.
In the alternative, M.J. Farms contended Act 312 cannot be applied retroactively to the present litigation because the original petition was filed prior to the enactment of Act 312, which became effective June 8, 2006. Citing Bourgeois v. A.P. Green Industries, Inc., 00-1528 (La.4/3/01), 783 So.2d 1251, M.J. Farms argued its cause of action vested at the time the suit was filed and subsequent legislation cannot retroactively divest it of its cause of action.
The trial court conducted a hearing on defendants' motions and exceptions on August 28, 2006. Thereafter, the trial court took the matter under advisement.[7] On *23 September 11, 2006, while the trial court ruling in this matter was pending, the State of Louisiana through the Attorney General ("the State") filed a Petition for Intervention of Right.[8] In that pleading, the State conditionally sought to intervene in the proceedings, only if the provisions of Title 30 and Act 312 are applicable to the present claim.[9]
In addition, the State filed a Memorandum defending the constitutionality of Act 312 against the arguments M.J. Farms raised in its opposition to defendants' motions to stay. Essentially, the State argued Act 312 is procedural in nature and it is not intended to strip M.J. Farms of its cause of action. Thus, the State argued M.J. Farms may still recover with the only difference that it must follow the procedures Act 321 sets forth.
On January 8, 2007, the trial court issued its judgment with respect to defendants' motion to stay, thereby declaring Act 312 unconstitutional and unenforceable.
The State, Exxon and several other defendants appealed the trial court's judgment to this Court. After considering the matter,[10] this Court found M.J. Farms failed to raise the issue of constitutionality through a proper pleading as required by Vallo v. Gayle Oil Company, Inc., 94-1238 (La.11/30/94), 646 So.2d 859. Accordingly, we vacated the judgment of the district court and remanded the case to allow plaintiffs to specially plead the unconstitutionality of Act 312. M.J. Farms, Ltd. v. Exxon Mobil Corporation, 07-0450 (La.4/27/07), 956 So.2d 573.
After remand, M.J. Farms filed a "Motion to dismiss and/or strike and/or for declaratory judgment declaring Act 312 of 2006 unconstitutional and inapplicable to the instant case." It first argued Act 312 does not apply to the present case because Act 312 amended and enacted only provisions of Title 30, while M.J. Farms asserted claims under Title 31 (the Louisiana Mineral Code), and under the Civil Code. According to M.J. Farms, the provisions of Title 30 are of public law, dealing with administrative actions that may be taken by the appropriate state agencies (Attorney General, LDNR and LDEQ), and are distinct from those contained in the Mineral Code, Title 31, which is devoted exclusively to private actions by landowners.
In the alternative, if Act 312 applied to the instant case, M.J. Farms contended the Act is unconstitutional because it attempts to divest plaintiff of its substantive vested rights which accrued prior to the enactment of the Act. Citing Bourgeois v. A.P. Green Industries, Inc., 00-1528 (La.4/3/01), 783 So.2d 1251, M.J. Farms argued retroactive application of Act 312 "violates the due process, equal protection, *24 and contracts clauses of the United States and Louisiana Constitutions." In addition, M.J. Farms contended Act 312 deprives it of its access to courts and further divests district courts of the original jurisdiction vested by the Louisiana Constitution.
Defendants and the State opposed M.J. Farms' motion. They first argued Act 312 clearly applies to the present case under the language of Section (B)(1) which provides that the Act shall apply to "any litigation or pleading making a judicial demand arising from or alleging environmental damage."[11]
With regard to the issue of constitutionality, defendants argued Act 312 does not divest plaintiff of its substantive rights; rather, it merely provides a procedure through which these rights are asserted. They point out Section (H)(1) of Act 321 specifically provides, in pertinent part, that "[t]his Section shall not preclude an owner of the land from pursuing a judicial remedy or receiving a judicial award for private claims suffered as a result of environmental damages except as otherwise provided in this Section." La.Rev.Stat. § 30:29(H)(1).
Defendants further argued Act 312 does not deprive plaintiff of its access to courts and it does not violate the original jurisdiction granted to the district courts because the final determination of liability and damages rests with the trial court. Defendants pointed out under the wording of Act 312, the case is referred to LDNR only after a party-defendant admits liability, or the trial court makes a determination that environmental damages exists and identifies the responsible parties.[12]
*25 Furthermore, defendants contended Act 312 does not make substantive changes in terms of jurisdiction. They pointed out the prior law had also granted concurrent jurisdiction to state agencies, such as the Louisiana Office of Conservation. According to defendants, Act 312 does not expand the existing jurisdiction, but only mandates the involvement of the state agencies for assessment of appropriate damages and remediation plans.
After conducting a hearing, the trial court, without assigning written reasons, signed a judgment declaring Act 312 of 2006 unconstitutional and unenforceable. The trial court's judgment provides, in pertinent part:
After reviewing the pleadings and hearing arguments of counsel for plaintiff and defendants regarding the constitutionality of Act 312 of the 2006 Regular Session of the Louisiana Legislature, the court determined said Act to be unconstitutional;
The Court specifically finds Act 312 of the 2006 Regular Session of the Louisiana Legislature violates Article V, Section 16 of the Louisiana Constitution, the Fifth Amendment of the United Stated Constitution, and Article I, Section 4 of the Louisiana Constitution; therefore
IT IS ORDERED, ADJUDGED AND DECREED that Act 312 of the 2006 Regular Session of the Louisiana Legislature is unconstitutional and unenforceable.
The State, Exxon and several other defendants[13] appealed the trial court's judgment to this court.

NON-CONSTITUTIONAL GROUNDS ASSERTED
This Court has long adhered to the principle that it "should avoid constitutional questions whenever a case can be disposed of on non-constitutional grounds." Sims v. Mulhearn Funeral Home, Inc., 07-0054 (La.5/22/07), 956 So.2d 583, 588. "This Court does not generally reach or determine constitutional issues unless, in the context of a particular case, the resolution of such issues is necessary to decide the case." Cameron Parish School Bd. v. ACandS, Inc., 96-0895 (La.1/14/97), 687 So.2d 84, 87; Ring v. State, Dept. of Transp. & Development, 02-1367 (La.1/14/03), 835 So.2d 423, 428. Accordingly, this Court's approach in cases such as this is to determine whether the case may be disposed of on non-constitutional grounds before reaching the constitutional issue. See e.g., Denham Springs Economic Development Dist. v. All Taxpayers, Property Owners, 04-1674 (La.2/4/05), 894 So.2d 325; Louisiana Associated General Contractors, Inc. v. New Orleans Aviation Bd., 97-0752 (La. 10/31/97), 701 So.2d 130.
In accordance with Sims, 956 So.2d at 588, M.J. Farms first contends there are grounds upon which this case can be decided without reaching the constitutionality of Act 312. M.J. Farms presents a twofold argument in this regard: (1) Act 312 is inapplicable because its claims for surface *26 restoration damages arise from the Mineral Code, Title 31, whereas Act 312 amended only Title 30 of the Revised Statutes; and (2) Act 312 cannot be applied retroactively to this suit filed prior to the effective date of the Act because the Legislature did not include express language that Act 321 was to be applied retroactively.
M.J. Farms first argues Act 312 does not apply to the present case because Act 312 seeks to amend and enact only provisions of Title 30, while plaintiff asserts its restoration claim primarily under the Mineral Code, and in particular under La.Rev. Stat. § 31:22.[14] M.J. Farms points out Act 312 was intended "to amend and reenact Rev. Stat. §§ 30:82(6), 89.1 and 2015.1(B), (C)(1), (2), and (4), (D), (E)(1), (F)(2), (H), (I), and (K) and to enact Rev. Stat. §§ 30:29, 29.1, and 2015.1(L) ...," without any references to actions under the Mineral Code.[15]
To the contrary, defendants contend although M.J. Farms may not have strictly cast its pleadings under Title 30, the provisions of La.Rev.Stat. § 30:29(B)(1) automatically trigger the mechanism of Act 312 when a judicial demand is made in a suit for environmental damages resulting from oilfield sites or exploration and production sites. Defendants contend M.J. Farms' petition makes such a demand. Defendants further contend that even though M.J. Farms made this argument to the district court, the trial court met the constitutional issue without mention of M.J. Farms' non-constitutional argument. Defendants argue the trial court's silence on the issue of the applicability of Act 312 constitutes a rejection of M.J. Farms' argument in this regard.
Generally, when a trial court judgment is silent as to a claim or demand, it is presumed the relief sought was denied. Barham & Arceneaux v. Kozak, 02-2325 (La.App. 1 Cir. 3/12/04), 874 So.2d 228, 241, writ denied, 04-0930 (La.6/4/04), 876 So.2d 87; Brooks v. Tuesday Morning, Inc. Co., 32,452 (La.App. 2 Cir. 10/27/99), 745 So.2d 161; Martinez v. Reno, 99-114 (La.App. 5 Cir. 9/15/99), 742 So.2d 1014; Livings v. Langston Companies, Incorporated/Continental Bag Div., 96-636 (La. App. 3 Cir. 12/5/96), 685 So.2d 405; Zatzkis v. Zatzkis, 91-1623, 92-0633, 92-0717 and 92-2637 (La.App. 4 Cir. 12/16/93), 632 So.2d 307, writ denied, 94-0157 (La.6/24/94), 640 So.2d 1340, writ denied, 94-0993 (La.6/24/94), 640 So.2d 1341. There being no mention in the trial court judgment of M.J. Farms' contention Act 312 was inapplicable, it is presumed the trial court rejected that assertion. We must now test whether that presumption is correct as a matter of law, utilizing well established rules of statutory construction.
The function of statutory interpretation and the construction given to legislative acts rests with the judicial branch of the government. Theriot v. Midland Risk Ins. Co., 95-2895 (La.5/20/97), 694 So.2d 184, 186. The rules of statutory construction are designed to ascertain and enforce the intent of the Legislature. Succession of Boyter, 99-0761 (La.1/7/00), 756 So.2d 1122, 1128; State v. Piazza, 596 So.2d 817, 819 (La. 1992). Legislation is the solemn expression of legislative will and, thus, the interpretation of legislation is primarily the *27 search for the legislative intent. Boyter, 756 So.2d at 1128; Cat's Meow, Inc. v. City of New Orleans through Dep't of Fin., 98-0601 (La.10/20/98), 720 So.2d 1186, 1198. We have often noted the paramount consideration in statutory interpretation is ascertainment of the legislative intent and the reason or reasons which prompted the Legislature to enact the law. State v. Johnson, 03-2993 (La.10/19/04), 884 So.2d 568, 575; Theriot, 694 So.2d at 186.
The starting point in the interpretation of any statute is the language of the statute itself. Johnson, 884 So.2d at 575; Theriot, 694 So.2d at 186. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." La. Civ.Code. art. 9; Johnson, 884 So.2d at 575. However, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." La. Civ.Code art. 10; Fontenot v. Reddell Vidrine Water Dist., 02-0439 (La.1/14/03), 836 So.2d 14, 20. Moreover, "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole." La. Civ.Code art. 12.
It is also well established that the Legislature is presumed to enact each statute with deliberation and with full knowledge of all existing laws on the same subject. Johnson, 884 So.2d at 576; State v. Campbell, 03-3035 (La.7/6/04), 877 So.2d 112, 117. Thus, legislative language will be interpreted on the assumption the Legislature was aware of existing statutes, well established principles of statutory construction and with knowledge of the effect of their acts and a purpose in view. Johnson, 884 So.2d at 576-77; Campbell, 877 So.2d at 117. It is equally well settled under our rules of statutory construction, where it is possible, courts have a duty in the interpretation of a statute to adopt a construction which harmonizes and reconciles it with other provisions dealing with the same subject matter. La. Civ.Code art. 13; City of New Orleans v. Louisiana Assessors' Retirement and Relief Fund, 05-2548, 986 So.2d 1 (La.10/1/07).
La.Rev.Stat. § 30:29(B)(1), the codification of 2006 La. Acts 312, provides, in pertinent part:
Notwithstanding any law to the contrary, immediately upon the filing or amendment of any litigation or pleading making a judicial demand arising from or alleging environmental damage, the provisions of this Section shall apply and the party filing same shall provide notice to the state of Louisiana through the Department of Natural Resources, commissioner of conversation and the attorney general.
(Emphasis added).
"Environmental damage" is defined as:
[A]ny actual or potential impact, damage, or injury to the environmental media caused by contamination resulting from activities associated with oilfield sites or exploration and production sites. Environmental media shall include but not be limited to soil, surface water, ground water, or sediment.
La.Rev.Stat. § 30:29(I)(1).
Reading La.Rev.Stat. § 30:29, we find it clear and unambiguous that the provisions of Act 312 are called into play when "any litigation or pleading making a judicial demand arising from or alleging environmental damage" is filed. Although M.J. Farms urges us to limit those provisions to actions brought by a public entity, rather than one a private land owner might file, such distinction does not exist in the language *28 of the statute. The only limitation evidenced in the language above-quoted is that such litigation must involve "contamination resulting from activities associated with oilfield sites or exploration and production sites" and not others. As evidenced by M.J. Farms' pleadings,[16] the present litigation concerns contamination associated with oilfield sites or exploration and production sites and falls within the provisions of La.Rev.Stat. § 30:29. Simply stated, Act 312 requires DNR compliance by private parties involving cleanup and remediation activities subject to DNR's jurisdiction. In essence, all oil and gas activity on private property in Louisiana occurs under a mineral right subject to the Mineral Code. The fact that private parties have a cause of action for cleanup of their property under the Mineral Code does not remove the matter from DNR's jurisdiction.
Moreover, Article 2 of the Mineral Code[17] does not require us to find the provisions of Act 312 inapplicable to the present case. No conflict exists between the Mineral Code and the provisions of Act 312. Simply put, Act 312 makes certain provisions, not provided for in the Mineral Code, for the cleanup and remediation of oilfield sites which do not meet environmental standards and these provisions are called into play when a private suit involves environmental damage that is subject to DNR's jurisdiction. Rather than conflict with the Mineral Code, Act 312 supplements the Mineral Code. Therefore, the provisions of Act 312 apply and there is no merit to M.J. Farms' contention otherwise.
M.J. Farms next contends Act 312 is inapplicable to the present case because it filed its claim before the Legislature passed Act 312 and the Act does not specifically provide for retroactive application. Relying on Bourgeois v. A.P. Green Industries, Inc., 00-1528 (La.4/3/01), 783 So.2d 1251 and Mallard Bay Drilling, Inc. v. Kennedy, 04-1089 (La.6/29/05), 914 So.2d 533, M.J. Farms suggests this Court has developed a two-step test to determine whether a statute is retroactive: first it must be determined whether the Legislature expressly provided so; second, in the absence of a specific declaration of retroactivity, the Act would still be applied retroactively if it is truly procedural or interpretative.
In the present case, M.J. Farms points out Act 312 merely provided it "shall not apply to any case in which the court on or before March 27, 2006, has issued or signed an order setting the case for trial, regardless of whether such trial setting is *29 continued." In the opinion of M.J. Farms, this legislative statement falls short of an express declaration of retroactivity, because it does not expressly provide it would otherwise apply to all pending claims.
The sources of law are legislation and custom. La. Civ.Code art. 1. Legislation is a solemn expression of legislative will. La. Civ.Code art. 2. In Louisiana, as in all codified systems, legislation is the superior source of law which custom cannot abrogate. La. Civ.Code art. 1, comments (a) and (c); La. Civ.Code art. 3. The legislative power of the state is vested in the Legislature. La. Const. art. III, § 1. In its exercise of the entire legislative power of the state, the Legislature may enact any legislation not prohibited by the state constitution. Board of Com'rs of Orleans Levee Dist. v. Department of Natural Resources, 496 So.2d 281, 286 (La. 1986) (on rehearing). Therefore, the Legislature is free, within constitutional confines, to give its enactments retroactive effect. St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816 (La.1992).
When determining whether a statute should be applied retroactively, a court must defer to the Legislature's intent. La. Civ.Code art. 6; Reichert v. State, Dep't of Transp. & Dev., 96-1419 (La.5/20/97), 694 So.2d 193, 199 (holding that "[i]nitially, a court must defer to legislative intent when determining whether a statute should be applied prospectively or retroactively."); Stelly v. Overhead Door Co. of Baton Rouge, 94-0569 (La.12/8/94), 646 So.2d 905, 911 (holding that "[w]hen determining whether a statute should apply retrospectively, courts are initially required to ascertain the legislature's intent regarding the retrospective or prospective application of the statute."). Article 6, entitled "Retroactivity of laws," provides:
In the absence of contrary legislative expression, substantive laws apply prospectively only. Procedural and interpretative laws apply both prospectively and retroactively, unless there is a legislative expression to the contrary.
A related statute, La.Rev.Stat. § 1:2, provides:
No Section of the Revised Statutes is retroactive unless it is expressly so stated.
This statute, unlike article 6, does not distinguish between substantive, procedural and interpretive laws. However, the jurisprudence has consistently construed the two provisions as being co-extensive, with La.Rev.Stat. § 1:2 having limited applicability to substantive legislation. Keith v. U.S. Fid. & Guar. Co., 96-2075, (La.5/9/97), 694 So.2d 180, 183; Manuel v. Louisiana Sheriff's Risk Mgmt. Fund, 95-0406 (La.11/27/95), 664 So.2d 81, 86; Segura v. Frank, 93-1271 (La.1/14/94), 630 So.2d 714, 721 n. 16; Rousselle v. Plaquemines Parish Sch. Bd., 93-1916 (La.2/28/94), 633 So.2d 1235, 1244; St. Paul Fire & Marine Ins. Co. v. Smith, 609 So.2d 809, 816 (La.1992).
This Court has interpreted the retroactivity provisions of La. Civ.Code art. 6 and La.Rev.Stat. § 1:2 to require a twofold inquiry: First, we must ascertain whether the Legislature expressed in the enactment its intent regarding retrospective or prospective application. If the Legislature did so, our inquiry is at an end. If the Legislature did not, we must classify the enactment as substantive, procedural or interpretive. Cole v. Celotex Corp., 599 So.2d 1058, 1063 (La.1992); St. Paul Fire & Marine, 609 So.2d at 816. Notwithstanding, the principle contained in La. Civ.Code art. 6 and La.Rev.Stat. § 1:2 has constitutional implications under the Due Process and Contract Clauses of both the United States and Louisiana Constitutions, *30 such that even where the Legislature has expressed its intent to give a law retroactive effect, that law may not be applied retroactively if it would impair contractual obligations or disturb vested rights. See Keith, 694 So.2d at 183; Rousselle, 633 So.2d at 1244; Segura, 630 So.2d at 721; St. Paul Fire & Marine, 609 So.2d at 816 n. 11; Lott v. Haley, 370 So.2d 521, 523 (La.1979). See also 2 A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE, § 10 (3d ed. 1991) ("Retroactive application of new legislation is constitutionally permissible only if it does not result in impairment of the obligation of contracts or in divestiture of vested rights.").
This Court has had many opportunities to examine language the Legislature has employed in various enactments it has passed and to comment on whether such language expressly provided for retroactive application. See, e.g. Mallard Bay Drilling, Inc. v. Kennedy, 04-1089 (La.6/29/05), 914 So.2d 533, 543 (Section 2 of the Act provides that its provisions are interpretive of La.Rev.Stat. § 47:305.1 and "shall be applicable to all claims existing or actions pending on its effective date and to all claims arising or actions filed on and after its effective date."); Morial v. Smith & Wesson Corp., 00-1132 (La.4/3/01), 785 So.2d 1, 10 ("Act 291 contains a clear and unmistakable expression of legislative intent regarding its intended temporal effect. Section 2 of the Act states that its provisions "shall be applicable to all claims existing or actions pending on its effective date and all claims arising or actions filed on and after its effective date."); Cole v. Celotex Corp., 599 So.2d at 1064-65, (evidence of a clear expression of legislative intent to apply the comparative negligence law only prospectively through the legislature's inclusion of the clause: "`[t]he provisions of this act shall not apply to claims arising from events that occurred prior to the time this act becomes effective.'"). The present case provides us with the first opportunity to examine a verbal formulation such as that employed in 2006 La. Acts 312.
The first step under Article 6 and La.Rev.Stat. § 1:2, determining whether the Legislature expressly provided for retroactive application, is resolved by examining the specific language contained in the Act. St. Paul Fire & Marine, 609 So.2d at 816-17. Applying that tenet to the present case, Section 3 of Act 312 contains a clause, providing the Act "shall not apply to any case in which the court on or before March 27, 2006, has issued or signed an order setting the case for trial, regardless of whether such trial setting is continued." Phrasing the applicability clause in the positive rather than the negative, Act 312 is applicable to any case except those as of March 27, 2006 for which the court had issued or signed an order setting the case for trial. Reviewing such clause, we find the Legislature's inclusion of the phraseology "any case" evidences an express intention to apply Act 312 retrospectively and prospectively except for the limited number of cases for which an order had been issued or signed setting the case for trial as of March 27, 2006. Accordingly, the first step of our inquiry is dispositive and no further inquiry is necessary. Therefore, there being no argument that obviates the need to address the constitutional application of Act 312 to this case, we now proceed to entertain the constitutional issue such retroactive application presents.

CONSTITUTIONAL PROVISIONS OF RETROACTIVE APPLICATION
Having found no merit in M.J. Farms' arguments that finding Act 312 is inapplicable to the present case, we now turn to *31 the constitutional question raised by application of the statute to the claims asserted. In the district court, M.J. Farms raised three arguments: (1) the application of Act 312 to this case would unconstitutionally divest it of vested rights in violation of the substantive due process guaranties established by the Louisiana and United States Constitutions; (2) Act 312 deprived it of access to the courts; and (3) Act 312 deprived the district court of its original jurisdiction.

Due Process
As M.J. Farms points out, Act 312 became effective on June 8, 2006, after it had filed its original petition on April 25, 2006. Thus, the initial question this Court must resolve is whether Act 312 may be retroactively applied to it, when M.J. Farms' claims had been filed and were pending on the effective date of the statute, or whether such retroactive application would unconstitutionally divest it of vested rights.
This Court conducts de novo reviews of judgments declaring a statute unconstitutional. State v. All Property and Casualty Insurance Carriers Authorized and Licensed to do Business in the State, 06-2030 (La.8/25/06), 937 So.2d 313, 319; Louisiana Municipal Association v. State, 04-0227 (La.1/19/05), 893 So.2d 809. In conjunction with this review, certain principles apply. As a general rule, statutes are presumed constitutional; therefore, the party challenging the validity of a statute has the burden of proving its unconstitutionality. State v. Citizen, 04-1841 (La.4/1/05), 898 So.2d 325, 334; Louisiana Municipal Association, 893 So.2d at 842; Board of Commissioners of North Lafourche Conservation, Levee and Drainage District v. Board of Commissioners of Atchafalaya Basin Levee District, 95-1353 (La. 1/16/96), 666 So.2d 636, 639. Because the provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people, exercised through the Legislature, the Legislature may enact any legislation that the constitution does not prohibit. Louisiana Municipal Association, 893 So.2d at 842-843; Polk v. Edwards, 626 So.2d 1128, 1132 (La.1993); Board of Commissioners of Orleans Levee District v. Department of Natural Resources, 496 So.2d 281, 286 (La. 1986). As a result, a party challenging the constitutionality of a statute must point to a particular provision of the constitution that would prohibit the enactment of the statute, and must clearly and convincingly demonstrate it was the constitutional aim of that provision to deny the Legislature the power to enact the statute in question. World Trade Center Taxing District v. All Taxpayers, Property Owners, 05-0374 (La.6/29/05), 908 So.2d 623, 632; Caddo-Shreveport Sales and Use Tax Commission v. Office of Motor Vehicles Department Of Public Safety and Corrections of the State, 97-2233 (La.4/14/98), 710 So.2d 776, 779; Polk, 626 So.2d at 1132. A constitutional limitation on the legislative power may be either express or implied. World Trade Center Taxing District, 908 So.2d at 632; Caddo-Shreveport Sales and Use Tax Commission, 710 So.2d at 779-780.
Finally, because it is presumed the Legislature acts within its constitutional authority in enacting legislation, this Court must construe a statute so as to preserve its constitutionality when it is reasonable to do so. State v. Fleury, 01-0871 (La.10/16/01), 799 So.2d 468, 472; Moore v. Roemer, 567 So.2d 75, 78 (La. 1990). Stated another way, if a statute is susceptible of two constructions, one of which would render it unconstitutional or raise grave constitutional questions, this Court will adopt the interpretation of the *32 statute which, without doing violence to its language, will maintain its constitutionality. Hondroulis v. Schuhmacher, 553 So.2d 398, 416-417 (La.1988). Nevertheless, the constitution is the supreme law of this state, to which all legislative acts must yield. World Trade Center Taxing District, 908 So.2d at 632; Caddo-Shreveport Sales and Use Tax Commission, 710 So.2d at 780. When a statute conflicts with a constitutional provision, the statute must fall. Caddo-Shreveport Sales and Use Tax Commission, 710 So.2d at 780.
Relying primarily upon Bourgeois, 783 So.2d 1251, M.J. Farms points out it filed suit before the enactment of Act 312 and contends the retroactive application of Act 312 disturbs its vested rights. M.J. Farms argues Act 312 is clearly substantive in nature because it seeks to alter the rights of a private landowner to receive a full and complete recovery for their private injury to their property. M.J. Farms explains that under the prior law an oil field polluter was always obligated to pay the full amount of private law damages to a landowner. If the oil field polluter would also be found liable for violations of public law, it would receive a dollar-for-dollar credit for the amounts paid to the landowner as provided by La.Rev.Stat. § 30:89.1. According to M.J. Farms, Act 312 of 2006 changes the order of priorities in payment, insofar as the award received by the landowner will be deposited in the registry of the court and used to pay first for the restoration plan developed by the LDNR. In other words, under prior law it was the landowner first and the State second, whereas under Act 312 it is the State and the public interest first and the landowner comes second.
In contravention, defendants contend Act 312 does not divest plaintiff of any substantive vested rights, and further assert that Act 312 merely provides a procedure through which these rights are to be asserted. In support of their contention, defendants cite Sawicki v. K/S Stavanger Prince, 01-0528 (La.12/7/01), 802 So.2d 598 ("no one has a vested right in any given mode of procedure.").
This Court considered the retroactive application of newly-adopted statutory language to claims that had been filed prior to the effective date of the statutory change in Bourgeois, 783 So.2d 1251. In that case, the Court held that application of 1999 La. Acts 989 to the plaintiffs' suit "would impermissibly divest them of a vested right in their causes of action." Id., 783 So.2d at 1254. The Court therefore affirmed the district court's judgment "insofar as it declared Act 989 unconstitutional as applied to plaintiffs' causes of action." Id.
In Bourgeois, this Court, in a previous decision, had found the plaintiffs, asymptomatic current and former employees of Avondale Industries, Inc. who had suffered significant occupational exposure to asbestos, needed periodic medical examinations to monitor the effects of that exposure, had suffered "damages," and were therefore entitled under La. Civ.Code art. 2315 to recover medical monitoring costs. Bourgeois v. A.P. Green Indus., Inc., 97-3188 (La.7/8/98), 716 So.2d 355 ("Bourgeois I"). Following Bourgeois I, the Louisiana Legislature amended La. Civ.Code art. 2315 to eliminate medical monitoring as a compensable item of damage, unless the plaintiff has manifested physical or mental injury or disease. Bourgeois II, 783 So.2d at 1255. In addition to commentary that this Court incorrectly interpreted La. Civ.Code art. 2315 in Bourgeois I, the Legislature included a statement in the amendment that the newly-adopted language applied to pending cases. Id. After the amendment became effective, defendant, citing the new amendment, filed *33 exceptions of no cause of action to plaintiffs' previously-filed claims. Countering defendant's exception, plaintiffs responded in the district court with a motion to declare the amendment unconstitutional insofar as it applied to their claims. Id., 783 So.2d at 1255. This Court agreed with the trial court that retroactive application of the amended language to the plaintiffs' claims would unconstitutionally divest the plaintiffs' of their vested rights. Id.
To reach its decision in Bourgeois II, this Court initially analyzed whether the Legislature intended for the newly-adopted statutory language amending La. Civ.Code art. 2315 to be given retroactive effect as allowed by La. Civ.Code art. 6. Such an analysis is unnecessary in the case sub judice because, as we have already noted, the Legislature expressly included a retroactivity provision in Act 312  Section 3 of the Act 312 contains a clause, providing the Act "shall not apply to any case in which the court on or before March 27, 2006, has issued or signed an order setting the case for trial, regardless of whether such trial setting is continued." When a court "can determine the legislature's intent regarding retroactive application of [an act], the [La. Civ.Code art. 6] inquiry [to determine whether the statute was intended to be applied retroactively] is at an end." Id., 783 So.2d at 1258.
However, "[r]etroactive application of new legislation is constitutionally permissible only if it does not result in impairment of the obligations of contracts or in divestiture of vested rights." Id., 783 So.2d at 1258, quoting 2 A.N. YIANNOPOULOS, LOUISIANA CIVIL LAW TREATISE, § 10 (3d ed.1991). Therefore, after finding that the Legislature clearly intended that 1999 La. Acts 989 apply retroactively, this court in Bourgeois II analyzed whether retroactive application of the provision to plaintiffs' pending claims "would violate the constitutional prohibitions against impairment of contractual obligations or disturbance of vested rights." Id., 783 So.2d at 1258. The Court stated:
The legislature's power to enact retroactive laws is limited by the Due Process and Contract Clauses of the Federal and State Constitutions. U.S. Const. amend. XIV, § 1; U.S. Const. art. I, § 10[1]; La. Const. art. I, § 2; La. Const. art. 1, § 23. See also Segura [v. Frank], 93-1271 at p. 19-20 [(La.1/14/94)], 630 So.2d at 728, and cases cited therein. Plaintiffs contend retroactive application of Act 989 to their claims would contravene due process guarantees by divesting them of their vested rights in their causes of action which accrued prior to the effective date of the Act. We agree.
When a party acquires a right to assert a cause of action prior to a change in the law, that right is a vested property right which is protected by the guarantee of due process. Walls v. American Optical Corp., 98-0455, p. 8 (La.9/8/99), 740 So.2d 1262, 1268. See also Cole [v. Celotex Corp.], 599 So.2d [1058] at 1063 [(La.1992)]; Crier v. Whitecloud, 496 So.2d 305, 308 (La. 1986); Faucheaux v. Alton Ochsner Medical Found. Hosp. & Clinic, 470 So.2d 878, 878-79 (La.1985); Lott [v. Haley], 370 So.2d [521] at 524 [(La. 1979)]; Burmaster v. Gravity Drainage Dist. No. 2, 366 So.2d 1381, 1387 (La. 1978). Thus, a cause of action, once accrued, cannot be divested by subsequent legislation. See e.g. Faucheaux, 470 So.2d at 879 ("The statutes enacted after the acquisition of such a vested property right ... cannot be retroactively applied so as to divest the plaintiff of his vested right in his cause of action because such a retroactive application would contravene the due process guaranties."); Terrebonne v. South Lafourche Tidal Control Levee Dist., 445 *34 So.2d 1221, 1224 (La.1984) ("This vested right could not be impaired by subsequent legislation. The Legislature simply cannot take away an existing cause of action based upon substantive rights which had clearly been granted by legislation during the preceding session and had become vested on the effective date of the legislation."); Favrot v. Parish of East Baton Rouge, 34 La. Ann. 491 (La. 1882) ("[P]laintiff cannot be deprived of his [vested] right by mere legislative action."). Under Louisiana law, a cause of action accrues when a party has the right to sue. Falgout v. Dealers Truck Equip. Co., 98-3150, p. 12 (La.10/19/99), 748 So.2d 399, 407 ("When a party acquires a right, either to sue for a cause of action or to defend himself against one, that right becomes a vested property right and is protected by the due process guarantees."); Prejean v. Dixie Lloyds Ins. Co., 94-2979, p. 3 (La.9/15/95), 660 So.2d 836, 837 ("In Louisiana, a cause of action accrues when a party has a right to sue."); Cole, 599 So.2d at 1063 n. 15 ("Under Louisiana law, a cause of action accrues when the party has the right to sue.").
Id., 783 So.2d at 1258-59. Against that legal backdrop, the Bourgeois II Court considered "whether the plaintiffs in that case had an accrued cause of action, i.e., the right to sue, prior to the effective date of Act 989." Id., 783 So.2d at 1259.
In Louisiana, three elements are necessary for a negligence cause of action to accrue: fault, causation and damages. Austin v. Abney Mills, Inc., 01-1598 (La.9/4/02), 824 So.2d 1137, 1148. In fact, "a sine qua non for accrual of a cause of action is damages." Id., quoting Cole v. Celotex, 599 So.2d 1058, 1063, n. 15 (La. 1992).
M.J. Farms takes the view Act 312 of 2006 represents a substantive amendment of the law, because a landowner can no longer recover damages for a contamination on his land that also constitutes a public law violation. Essentially, M.J. Farms contends the Act provides a system that shifts the burden for bringing regulatory actions from state agencies to the landowner, thus, eviscerating the landowner's private cause of action. Plaintiff submits such a system weakens the protection of the environment because it shifts primary responsibility to enforce restoration to the landowners, while on the same time destroying their incentives to sue those who contaminate their property. These comments constitute policy considerations which are more appropriate before the legislative body of this state. As we have observed on many occasions, it is not our duty to determine the wisdom behind the enactment of legislation. See, e.g., Board of Directors of Indus. Development Bd. of City of Gonzales, Louisiana v. All Taxpayers, Property Owners, Citizens of City of Gonzales, 05-2298 (La.9/6/06), 938 So.2d 11, 28; Forum for Equality PAC v. McKeithen, 04-2477 (La.1/19/05), 893 So.2d 715, 730; Wooley v. State Farm Fire and Cas. Ins. Co., (La.1/19/05), 893 So.2d 746, 770. Our review of the legislative history of 2006 La. Acts 312 shows the Legislature heard various voices, pro and con, on this issue and it overwhelmingly chose to enact this legislation.
In the present case, M.J. Farms has pleaded theories of recovery based, inter alia, on negligence, failure to act as a reasonably prudent operator as provided in the Mineral Code and tangentially in the Civil Code, strict liability, breach of contract, and trespass. Act 312 does not divest plaintiff of any of these causes of action. Section (H)(1) of Act 312 specifically recognizes that "this Section shall not preclude an owner of the land from pursuing a judicial remedy or receiving a *35 judicial award for private claims suffered as a result of environmental damages except as otherwise provided in this Section." (Emphasis added). Moreover, as provided in La. Const. art. I, § 4, private rights are subject to "reasonable statutory restrictions and reasonable exercise of the police power." The provisions of Act 312 represent such reasonable restrictions. In that regard, we note the following language in the Act:
The legislature hereby finds and declares that Article IX, Section 1 of the Constitution of Louisiana mandates that the natural resources and the environment of the state, including ground water, are to be protected, conserved, and replenished insofar as possible and consistent with the health, safety, and welfare of the people and further mandates that the legislature enact laws to implement this policy. It is the duty of the legislature to set forth procedures to ensure that damage to the environment is remediated to a standard that protects the public interest. To this end, this Section provides the procedure for judicial resolution of claims for environmental damage to property arising from activities subject to the jurisdiction of the Department of Natural Resources, office of conservation.
La.Rev.Stat. § 30:29(A).
M.J. Farms' petition claims its property has suffered surface damages from oil and gas exploration and production activities which caused contamination with oil, grease, radioactive materials, toxic heavy metals and other hazardous chemicals. Because of these activities, its petition seeks containment, clean-up, remediation, and restoration of the surface to its original condition. See e.g., plaintiff's original petition ¶¶ 30 (The property "needs to be remediated and the land restored to its original condition."); 33 (The defendants need to remove "abandoned oil and gas exploration equipment and structures" and "restore the property."); 35 ("[L]eaks, spills, and other discharges of [NORMS, drilling fluids, chlorides, hydrocarbons and heavy metals] need to be rebated and the property restored to its original condition."); 47 ("The defendants have violated the statutory obligations imposed upon them by L.S.A.-R.S. 31:22 by their intentional, careless, wanton, reckless and unreasonable actions and failure to act by restoring as far as practicable the property of plaintiff to its original condition at the earliest reasonable time."); 51 ("Defendants have failed to restore the surface of the premises where oil and gas exploration and production activities took place...."); 54 ("Defendants are ... liable unto plaintiff to restore the premises and to remediate all contamination and/or pollutants which have impacted and/or will threaten the ground waste and/or aquifer."); 55 ("Defendants are also indebted unto plaintiff to perform and [sic] adequate restoration of the property."); and 63 (Defendants are liable for "[a]ll damages ... including without limitation clean up, costs, purification costs, ... remediation costs and restoration costs ... which shall include... the costs of testing, containment, prevention, abatement, remediation and/or restoration of all property damaged...."). It is clear application of Act 312 to this discrete cause of action implements and facilitates the accomplishment of M.J. Farms' prayer for the remediation and restoration of its property from the party or parties found liable for such damages. Furthermore, M.J. Farms' request for attorney's fees under La.Rev.Stat. 30:2015.1F(1), a remediation provision invoked in ¶ 64 of its original petition, belies its assertion the provisions of Title 30 are inapplicable to its cause of action.
After reviewing this legislative enactment, we find it clear that Act 312 attaches *36 a procedure "for judicial resolution of claims for environmental damage ..." established for purposes of "ensur[ing] that damage to the environment is remediated to a standard that protects the public interest." La.Rev.Stat. § 30:29(A). In that vein, Act 312 is comprised of six basic components. First, the act requires timely notice of such litigation to the State. La. Rev.Stat. § 30:29(B)(1). Second, the act stays the litigation until thirty days after notice is given. Id. Third, the act permits the State to intervene in the litigation. La.Rev.Stat. § 30:29(B)(2). Fourth, the act provides a role for the Office of Conservation with the Louisiana Department of Natural Resources ("LDNR") in the determination of the most feasible plan for evaluation and/or remediation of environmental damage. La. Rev.Stat. § 30:29(C). Fifth, the act provides for the payment of all damages for the evaluation or remediation of environmental damages and further provides that the Court shall oversee actual implementation of the plan adjudicated to be "most feasible." La.Rev. Stat. §§ 30:29(D) and (F). Sixth, the act allows the landowner and the State to recover attorney and expert fees, as well as costs from the responsible party or parties. La.Rev.Stat. § 30:29(E).
This Court is well aware, as noted Professor A.N. Yiannopoulos, Chair of the Eason-Weinmann Center of Comparative Law, has said, that there often is a "persisting dichotomy between law in the books and living law in Louisiana...." Louisiana Civil Code 2000 LV (A.N. Yiannopoulos ed., West 2000). Our decision in Corbello v. Iowa Prod., 02-0826 (La.2/25/03), 850 So.2d 686, 696, exemplified just such a dichotomy. In Corbello, we recognized "the need for a comprehensive body of legislation wherein the state would oversee the problem in oilfield waste sites." Id., 850 So.2d at 696. Indeed, it was our recognition in Corbello that prompted the Louisiana Legislature to take action in this area. Act 312 adopts a procedure and simply seeks to ensure that the property that is environmentally damaged is actually remediated.
In making this determination, we hasten to add that Act 312 exempts from its application all cases in which a contractual agreement exists between the parties that contains a remediation provision that exceeds state standards. La.Rev.Stat. §§ 31:29(A) and (H). It is only when no such proviso exists, that Act 312 mandates the state's involvement.
For the foregoing reasons, we find the district court erred as a matter of law when it found 2006 La. Acts 312 unconstitutional because its retroactive application to this lawsuit filed prior to the effective date of the act impermissibly disturbed M.J. Farms' vested rights.

Divestiture of District Court's Original Jurisdiction
In its motion attacking the constitutionality of Act 312, M.J. Farms argues the act divests the district court of its original jurisdiction. We disagree.
La. Const. art. V, § 16, in pertinent part, provides:
(A) Original Jurisdiction. (1) Except as otherwise authorized by this constitution or except as heretofore or hereafter provided by law for administrative agency determinations in worker's compensation matters, a district court shall have original jurisdiction of all civil and criminal matters.
We discussed La. Const. art. V, § 16 at some length in Pope v. State, 99-2559 (La.6/29/01), 792 So.2d 713. There, this Court made the determination that the administrative procedure adopted in La. Rev.Stat. § 15:1711 allowed Department of Correction officials to recognize claims at *37 the inception of the action. Id., 792 So.2d at 718. In finding CARP impermissibly intruded upon the original jurisdiction of the district court, we found our State Constitution was violated because CARP provided administrative procedures as the exclusive remedy available to offenders for "complaints or grievances governed thereby insofar as federal law allows," and further prohibited a state court from entertaining any complaint or grievance unless the offender first exhausted his remedy under the Louisiana Corrections Administrative Remedy Procedure Act ("CARP"). At the basis of that conclusion, we stated that "[o]riginal jurisdiction is `[j]urisdiction in the first instance' or [j]urisdiction to take cognizance of a cause at its inception, try it, and pass judgment upon the law and facts'." Accordingly, we held CARP, as amended in 1989, violated the constitutional provision which vested district courts with original jurisdiction over all civil and criminal matter.
Applying the rationale of Pope to the present case, we find Act 312 does not divest the district court of original jurisdiction. Unlike CARP, not only is the claim for environmental damages filed in the district court, the claim is not deferred to DNR until the district court determines environmental damage exists and further determines the legally responsible party. La.Rev.Stat. § 30:29(C)(1). Moreover, the district court is not required to adopt the plan approved by the administrative agency, and further retains jurisdiction to compare the various proposed plans, whether proposed by a party or the administrative agency, and determines which plan is "a more feasible plan to adequately protect the environment and the public health, safety, and welfare." La.Rev.Stat. § 30:29(C)(5).

Access to the District Court
In its motion attacking the constitutionality of Act 312, M.J. Farms further argues that Act 312 denies it access to the district court to redress grievances.
La. Const. art. I, § 22 provides:
All courts shall be open, and every person shall have an adequate remedy by due process of law and justice, administered without denial, partiality, or unreasonable delay, for injury to him in his person, property, reputation, or other rights.
In Crier v. Whitecloud, this Court examined the historical background of Article I, § 22 of the Louisiana Constitution and concluded that in adopting this constitutional article, the Constitutional Convention did not intend to limit the Legislature's ability to restrict causes of action. Crier v. Whitecloud, 496 So.2d 305 (La. 1986). The access to courts clause does not "prohibit legislative restriction of legal remedies." Williams v. Kushner, 524 So.2d 191, 196 (La.App. 4 Cir.1988), amended and affirmed, 549 So.2d 294 (La. 1989). Instead, the clause "operates only to provide remedies which are fashioned by the legislature." Id.
Although Act 312 changes the remedy available to M.J. Farms in its efforts to obtain surface restoration of its immovable property, we do not find this denies it access to the courts. To the contrary, under the provisions of Act 312 the district court remains an active participant in the entire restoration process. It is the filing of pleadings in the district court making demand for environmental damages that triggers implementation of Act 312. See La.Rev.Stat. § 30:29(B)(1). Furthermore, it is in the district court that it is determined whether environmental damages exists, who caused the damage, and it is the district court that orders the development of a restoration plan. La.Rev.Stat. § 30:29(C)(1). Finally, it is the district court who considers the various restoration *38 plans, including any that the surface owner may choose to submit, determines which one is most feasible, and oversees the implementation of the restoration plan. La.Rev.Stat. § 30:29(C)(5). Accordingly, we find no merit to M.J. Farms' contrary assertion.

DECREE
For the foregoing reasons, the judgment of the district court which declared 2006 La. Acts 312 unconstitutional is reversed and set aside. This matter is remanded to the trial court for further proceedings consistent with the views expressed in this opinion.
REVERSED AND REMANDED.
JOHNSON, Justice, concurs and assigns reasons.
JOHNSON, Justice concurs and assigns reasons.
Any discussion concerning remediation of environmental damages to real property must include a discussion of Corbello, et al v. Iowa Production, Shell Oil Company, Shell Western E & P, Inc., et al, 02-0826 (La.2/25/03), 850 So.2d 686. In Corbello, this Court allowed private landowners for the first time, to collect money damages for environmental damages to the land surface, subsurface, and for cleanup of the groundwater, where the land had been contaminated with hazardous materials.
Prior to Corbello, any award for damages to real property was tied to fair market value. Corbello, was momentous, because this court recognized for the first time, that a private landowner was entitled to recover damages that exceeded the fair market value of the land, and represented the actual costs of restoring contaminated land to an acceptable condition. We concluded that the landowner was entitled to the amount of damages needed to restore the property, and the damage award need not be tethered to the market value of the property.
The Corbello case involved extensive groundwater contamination, with possible migration of contaminants to the underground Chicot Aquifer, which provides the public drinking water supply for the city of Lake Charles, and is located directly under the contaminated Iowa field. Defendants argued, in Corbello, that private landowners do not own the groundwater, therefore, private plaintiffs should not be allowed to recover for a public injury.
When we decided Corbello, the Louisiana Oilfield Site Restoration Law, LSAR.S. 30:80 et seq, did not provide a comprehensive solution to the problem of oilfield waste sites, and the statute did not expressly prohibit private landowners from seeking redress. Although the Department of Natural Resources is the agency charged, as public trustee, with protection of the State's natural resources, private landowners, at that time, had no obligation to notice or seek relief from that administrative agency before filing suit. Private landowners were not prohibited from seeking restoration damages, and there was no statutory mandate which required landowners to actually use the damages awarded to implement remediation or restoration. Defendant argued in Corbello, there was a real risk that the public would go unprotected, if private landowners were allowed to recover strictly for public injuries. LSA-R.S. 30:89.1 provided at that time:
[i]n the event an owner of a property interest in an oilfield site, or in other property affected by oil or gas exploration... obtains a final judgment... the party against whom such judgment was rendered, or who is obligated by such compromise, shall be given full credit against the obligation *39 sought to be enforced by the state of Louisiana or any state agency, and such obligation shall be reduced proportionately...
There are many scholarly law review articles that discuss the problems raised by Corbello. See Loulan Pitre, Jr., Legacy Litigation and Act 312 of 2006, 20 Tul. Envtl. L.J. 347 (2007); Mary Beth Balhoff, Corbello v. Iowa Production and the Implication of Restoration in Louisiana: Drilling Holes in Deep Pockets for Thirty-Three Million Dollars, 65 La. L.Rev. 271 (2004); Ryan M. Seidemann, Louisiana Wetlands and Water Law: Recent Jurisprudence and Post-Katrina and Rita Imperatives, 51 Loy. L.Rev. 861 (2005); and Loyd J. Bourgeois, Private Actions Seeking Remediation or Restoration Damages: Who Ensures the Cleanup Actually Occurs?, 17 Tul. Envtl. L.J. 355.
This Court noted two policy concerns in Corbello, the possibility of unclean land, which will likely affect the public, and secondly, if landowners cannot sue for cleanup costs, especially where there is a contract, the only parties who could oppose oil companies would be our understaffed and underfunded state agencies. In both cases, it was likely that the land would remain contaminated. At that time, it was unlikely that oil companies would engage in cleanup efforts, unless forced to do so by state agencies. This Court concluded that plaintiffs were entitled to a restoration damage award for groundwater cleanup.
Following Corbello, the Legislature enacted legislation that requires all awards for environmental cleanup from oil exploration and production sites to actually be used for that purpose. When the legislature enacted LSA-R.S. 30:82(6) to address the issue of remediation of oilfield sites and exploration and production sites, the Legislature's intent was that any monies collected in remediation would actually inure to benefit the public, because the landowner was now obligated to actually clean up the site and prevent future damage to the environment.
Specifically, Act No. 312 of 2006 was designed "to set forth procedures to ensure damage to the environment is remediated to a standard that protects the public interest." In addressing the legislature Mr. Scott Angelle, Secretary of the Department of Natural Resources, (in a May 17, 2006 House Natural Resources Committee) urged adoption of a public policy which would require that judicial awards for environmental remediation be placed in the registry of the court, to ensure cleanup. In this meeting, Mr. Angelle noted that:
[I]n February 2003, in the Corbello litigation, the Louisiana Supreme Court recognized that the landowner who was granted a judicial award for damages to usable groundwater was not required to use any of the judicial award of $33M to remediate the damage to that groundwater. The law contained no provision to require the groundwater to be remediated. He stated that in the Corbello case the plaintiffs did nothing wrong by making their claim; however, the law proved inadequate to address the needs of the public to remediate the environmental damages to the public water supply. [He] pointed out that this bill will require all awards for environmental cleanup from exploration and production sites to be used for that purpose, which unfortunately is not the law of the land today. He further explained that if a landowner chooses to file a suit seeking a claim for environmental damages, he retains the right to do so in a court of appropriate jurisdiction.
*40 In the present case, the public interest that is involved is the State's duty to ensure the health, safety, and welfare of its citizens. The legislature created the means by which this duty can be met when it enacted Act 312 of 2006. I agree with the majority that this legislation is constitutional. This Act does not violate LSA-Const. Art. I, § II; LSA-Const. Art. I, § V, nor United States Constitution Art. V, § 16. Nor does it deprive any party of a cause of action. According to Everything on Wheels Subaru, Inc. v. Subaru South, Inc., 616 So.2d 1234, 1238 (La.1993), a cause of action exists if there are "operative facts which give rise to the plaintiff's right to judicially assert the action against the defendant."
The majority is correct in concluding that Act 312 of 2006 should be applied retroactively to the current case. Bourgeois v. A.P. Green Industries, Inc., 00-1528 (La.4/3/01), 783 So.2d 1251, held that "[t]he legislature is free, within constitutional confines, to give its enactments retroactive effect." Further LSA-C.C. art. 6 provides, in pertinent part, that "... [p]rocedural and interpretative laws apply both prospectively and retroactively unless there is a legislative expression to the contrary." In the present case, the plaintiffs have failed to meet this burden and show that there is a legislative expression to the contrary that would prevent this Act from being retroactively applied. A plain reading of Section 3 of the Act clearly indicates that the legislature intended that the Act be retroactively applied. Section 3 provides that "the provisions of Section 1 of this Act shall not apply to any case in which the court on or before March 27, 2006, has issued or signed an order setting the case for trial, regardless of whether such trial setting is continued ..."
Thus, for the reasons stated above, Act 312 of 2006 is constitutional and should be retroactively applied to the current case.

On Rehearing
REHEARING GRANTED IN PART AND OTHERWISE DENIED. The following paragraph which appears on page 30 on this Court's Slip Opinion dated July 1, 2008, is deleted:
In making this determination, we hasten to add that Act 312 exempts from its application all cases in which a contractual agreement exists between the parties that contains a remediation provision that exceeds state standards. La. Rev.Stat. §§ 30:29(A) and (H). It is only when no such proviso exists, that Act 312 mandates the state's involvement.
Footnote seven of this Court's opinion is also amended to show that Exxon Mobil's declinatory and dilatory exceptions were neither heard nor decided by the Trial Court on August 28, 2006.
In all other respects, the rehearing applications of the State of Louisiana and Exxon Mobil Corporation are denied.
NOTES
[*] Retired Judge Robert Klees, assigned as Associate Justice Ad Hoc sitting for Chief Justice Pascal F. Calogero, recused.
[1] Separate deeds were recorded on November 1, 2005 and November 22, 2005 into the conveyance records of Catahoula Parish and on January 12, 2006 into the conveyance records of Avoyelles Parish.
[2] Approximately 25 defendants named in the original and supplemental and amending petitions are the owners of the mineral rights of the property and/or assignees of these rights that have maintained or currently maintain mineral, oil and gas exploration and production activities on the property at issue.
[3] In particular, see La.Rev.Stat. § 31:22 which provides:

The owner of a mineral servitude is under no obligation to exercise it. If he does, he is entitled to use only so much of the land as is reasonably necessary to conduct his operations. He is obligated, insofar as practicable, to restore the surface to its original condition at the earliest reasonable time.
[4] La. Civ.Code art. 2315.3 was repealed by Acts 1996, 1st Ex.Sess., No. 2, § 1, eff. April 16, 1996. In its petition for damages, plaintiff asserted the repealed provisions still apply to the present claims, presumably because its cause of action arose prior to April 16, 1996, when oil and gas activities on the property began more than 30 years ago, some as early as 1949. This issue is not before us.
[5] Exxon's reliance on Act 312 differs slightly from the one Wagner and other defendants raised. For instance, Exxon does not appear to take issue with M.J. Farm's failure to notify the Attorney General of the present litigation and requests more than the temporary 30-day stay asked by Wagner. Thus, Exxon essentially requested the trial court to dismiss the case or stay the proceedings indefinitely to allow LDNR and LDEQ to first investigate the matter.
[6] The doctrine of "primary jurisdiction" is applicable when a court and state/governmental agency have concurrent jurisdiction over a claim or a dispute leading to potential conflicts on how such disputes are resolved. In such cases, a court at its discretion may dismiss the claims before it and defer the matter to the agency that has been granted primary jurisdiction over the claims. See The Daily Advertiser v. Trans-La, 612 So.2d 7 (La. 1993) distinguishing between "primary" jurisdiction and "exclusive" jurisdiction. See also Magnolia Coal Terminal v. Phillips Oil Co., 576 So.2d 475 (La. 1991), the concurring opinions of Chief Justice Calogero, Justice Lemmon and Justice Dennis and the subsequent per curiam (on rehearing).
[7] Several defendants, including Exxon, Wagner and JMR Oil Co. ("JMR") filed various exceptions of vagueness and failure to comply with pleading requirements, prematurity (for breach of contract claims), improper cumulation, no cause of action (for claims of unjust enrichment), no cause of action and no right of action (for breach of contract claims and certain violations of statutory obligations) which were also argued at the August 28, 2006 hearing. The trial court denied all these exceptions. We note the exceptions of prematurity the trial court denied were asserted on the grounds the mineral lease had not yet expired, and therefore, these exceptions were distinct from the other exceptions of prematurity based upon the failure to exhaust administrative remedies under Act 312. Only one defendant, JMR filed an application for supervisory writs from the trial court's denial of the exceptions. On April 27, 2007, we transferred JMR's writ application to the Court of Appeal, Third Circuit. M.J. Farms, Ltd. v. Exxon Mobil Corp., 07-573 (La.4/27/07), 955 So.2d 672.
[8] The record is unclear how the Attorney General received notice of this claim.
[9] The Attorney General's Petition for Intervention of Right reads, in pertinent part:

To the extent that plaintiff is able to establish and prove actual injury or compensation to which the Conservation Act, La. R.S. 30:1, et seq., the Environmental Quality Act, La. R.S. 30:2001, et seq., and Act 312, are determined to be inapplicable, Intervenor makes no claim against defendants or plaintiff. However, if these laws do apply, the State intervenes to protect the public and demands that defendants provide it with a similar scientific analysis that shows the nature and extent of the damage of the property caused by the defendants' operations.
[10] Initially, this Court issued an order requesting the parties to show cause why the appeal should not be dismissed on the ground the issue of constitutionality was not raised by a proper pleading in the district court.
[11] La.Rev.Stat. § 30:29(B) provides, in pertinent part:

B. (1) Notwithstanding any law to the contrary, immediately upon the filing or amendment of any litigation or pleading making a judicial demand arising from or alleging environmental damage, the provisions of this Section shall apply and the party filing same shall provide timely notice to the state of Louisiana through the Department of Natural Resources, commissioner of conservation and the attorney general....
[12] A similar issue was presented in a writ application to this Court in Duplantier Family Partnership v. B.P. Amoco. In that case, defendant filed a motion in the trial court to revise the case management order to implement the procedure provided by Act 312. Essentially, defendant argued that in cases where defendants deny liability, the trial court must first hold a hearing on "liability only" to establish whether there is actual or potential environmental damages and to determine the responsible parties. It argued, only after the determination of liability is made, can the case be referred to LDNR for development of a remediation plan; thereafter, the case would proceed to trial on damages and other remaining issues in the case, if any.

By contrast, the Duplantier Family Partnership argued there should be one trial on all issues, as Act 312 does not mandate a "limited hearing" on liability as defendant suggested, but instead indicates the determination of liability must be made by the "finder of fact," which in this case will be the jury. According to the Duplantier Family Partnership, in cases where defendants deny liability, the case would be tried on all issues prior to referral to LDNR.
The trial court granted defendants' motion to revise the case management order, essentially adopting the "two-trial" procedure outlined by defendants. On plaintiff's writ application, the court of appeal reversed reasoning that the "two trial" procedure is contrary to Act 312 and the applicable articles of the Code of Civil Procedure as it would result in a bifurcation of the trial without the consent of all parties and cause piecemeal litigation. 955 So.2d 763, 07-0293 (La.App. 4 Cir. 5/16/07), 955 So.2d 763 (unpublished). The court of appeal further noted the "one trial on all issues" advanced by plaintiffs was consistent with the language of Act 312 as well as the relevant articles of the Code of Civil Procedure, and found no benefit in having two trials.
This Court denied defendants' application for supervisory writs. Duplantier Family Partnership v. B.P. Amoco, 07-1241 c/w 07-1265 and 07-1271 (La.9/28/07), 964 So.2d 367, 368. We are mindful that supervisory writ denials by this Court have no precedential value. St. Tammany Manor, Inc. v. Spartan Bldg. Corp., 509 So.2d 424 (La. 1987).
[13] The record indicates 4 (four) separate appeals were filed with the trial court: one by the State, one by Exxon, one filed jointly by Wagner and 12 other defendants, and one filed jointly by Benedict and L.W. Wickes Agent Corporation. In its brief, the State indicates another defendant, Missiana, L.L.C., has also filed an appeal. However, our review shows the record is devoid of any indication Missiana is one of the appellants in this Court.
[14] See n. 3, supra, for text of La.Rev.Stat. § 31:22.
[15] According to M.J. Farms, the provisions of Title 30 are of public law, dealing with administrative actions that may be taken by the appropriate state agencies (Attorney General, LDNR and LDEQ), and are entirely separate and distinct from those contained in Title 31, which are devoted exclusively to private actions by landowners.
[16] M.J. Farms' Petition for Damage asserts claims based on alleged environmental damage. See, e.g., Petition for Damages at ¶¶ 30 ("defendants have caused and continue to cause the land surface and the ground beneath the surface to be contaminated, polluted, and impregnated with oils, grease, naturally occurring radioactive materials (NORMS), and other hazardous and dangerous chemicals, equipment, pipes, tanks and related appurtenances ..."); 31 ("defendants and their lessees . . . have . . . caused the associated usable ground water and/or aquifer to be threatened, impacted, contaminated, polluted and/or became environmentally unsafe"); 38 (damages allegedly sustained by M.J. Farms "include the contamination of the surface of the property and ground waters on and beneath the property.").
[17] La.Rev.Stat. § 31:2 provides:

The provisions of this Code are supplementary to those of the Louisiana Civil Code and are applicable specifically to the subject matter of mineral law. In the event of conflict between the provisions of this Code and those of the Civil Code or other laws the provisions of this Code shall prevail. If this Code does not expressly or impliedly provide for a particular situation, the Civil Code or other laws are applicable. (Emphasis added).