Judgment rendered June 29, 2022.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 54,540-CA
No. 54,654-CA
(Consolidated Cases)

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

No. 54,540-CA

CITY OF SHREVEPORT
                    Plaintiff-Appellant

versus

SHREVEPORT MUNICIPAL
FIRE and POLICE CIVIL
SERVICE BOARD AND
RICKEY DAUGHTREY
                    Defendants-Appellees

No. 54,654-CA

CITY OF SHREVEPORT
                    Plaintiff-Appellant

versus

SHREVEPORT MUNICIPAL
FIRE and POLICE CIVIL
SERVICE BOARD, RICKEY
DAUGHTREY, LADARIOUS
FORD, AND DEONQUANITA
SMITH
                    Defendants-Appellees

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court Nos. 627,569 and 625,892

Honorable Ramon Lafitte, Judge

* * * * *

CARMOUCHE, BOKENFOHR,
BUCKLE & DAY, PLLC
By: Nichole M. Buckle
    Amy G. Day

BREEDLOVE LAW FIRM
By: Pamela N. Breedlove

Counsel for Appellant

Counsel for Appellee,
Rickey Daughtrey

BILLY R. CASEY                              Counsel for Appellee,
                                           Shreveport Municipal
                                           Fire and Police Civil
                                           Service Board


* * * * *


Before PITMAN, STEPHENS, and ROBINSON, JJ.

**ROBINSON, J.**

In these consolidated appeals, the City of Shreveport ("City") appeals two district court judgments upholding decisions by the Shreveport Municipal Fire and Police Civil Service Board ("Board") to reverse two terminations of a police officer who had been earlier placed on leave without pay.

We affirm both judgments.

## FACTS

Rickey Daughtrey, an officer with the Shreveport Police Department ("SPD"), violated policies of the SPD and possibly state law when he, along with several other SPD officers, submitted fraudulent physician certificates in order to obtain paid sick leave.

In a letter dated April 16, 2020, Daughtrey received notice from the SPD's Internal Affairs Division that he was being placed on "administrative" leave with pay effective that date.

On May 26, 2020, a Caddo Parish assistant district attorney sent an email to the SPD stating she had reviewed the materials that were submitted regarding the officers and had determined that the matters were not suitable for criminal prosecution. She added there were adequate remedies within the SPD's administrative process.

On May 26, 2020, notice was sent to Daughtrey that he was being placed on "departmental" leave without pay effective the following day. On June 1, 2020, Daughtrey received notice of an investigation from the SPD.

A Personnel Action Form ("PAF") signed by SPD Chief Ben Raymond and stating that Daughtrey had been placed on "administrative" leave without pay pending an investigation by the SPD was submitted to the

Board on June 24, 2020. The Board approved the PAF at its meeting on July 8, 2020.

On July 17, 2020, Daughtrey received notice that he was terminated effective as of that date. He appealed his termination to the Board, which conducted a lengthy hearing on September 9, 2020, concerning Daughtrey and two other officers. The Board voted to revoke the PAF that it had approved in July. It also ruled that the discipline and entire process was an absolute nullity. The City was ordered to reinstate Daughtrey and make him whole.

In a September 16, 2020, letter to Chief Raymond, the Board's chairman detailed the Board's factual findings at the September 9 meeting. He wrote that the Board ruled that the SPD failed to meet the minimum requirements prescribed by law, and that Daughtrey and the other officers were to be reinstated and made whole. The discipline and entire process was declared an absolute nullity. The Board ordered that the terminations of the three officers were absolute nullities.

The City sought review of the Board's decision. Citing the 15-day appeal provision in La. R.S. 33:2501, the City noted that Daughtrey did not appeal or file a demand with the Board after being placed on leave without pay. The City also sought a stay of Daughtrey's reinstatement. The stay was denied on October 6, 2020.

The district court conducted a hearing on April 22, 2021, to review the Board's findings. It rendered judgment which: (1) reversed the Board's decision to reinstate Daughtrey's pay for the period when he was on unpaid leave because that decision was not made in good faith for cause since Daughtrey had not appealed his placement on unpaid leave; (2) affirmed the

2

Board's good faith for cause determination that placing Daughtrey on leave without pay was discipline that made his termination a second discipline not permitted by law; (3) affirmed the Board's good faith for cause decision to reverse Daughtrey's termination; and (4) modified the Board's reinstatement order to provide that Daughtrey's reinstatement with pay and benefits was retroactive to the July 17, 2020, date of termination, and, as modified, affirmed it. The City of Shreveport appealed.

After the district court denied the stay but before the district court conducted the hearing at which it reviewed the Board's September 9 decision, the City took additional action against Daughtrey in October of 2020. He was placed on paid leave on October 7. Two days later, he was given notice of a pretermination hearing. On October 13, Daughtrey was terminated effective that date. He appealed to the Board.

The Board heard Daughtrey's second appeal on December 9, 2020. As noted earlier, the City's appeal to the district court from the Board's September 9 decision was still pending at the time. The City argued that because the Board had earlier declared that the suspension and the first termination were absolute nullities, the earlier discipline was considered to have never taken place, which put the City in the same position it had been in on May 26, 2020, prior to placing Daughtrey on leave without pay.

The Board ruled that the second termination was in violation of the 60-day investigation rule in La. R.S. 40:2531(B)(7) and was an absolute nullity.[1] Daughtrey was ordered reinstated and made whole.

---

[1] La. R.S. 40:2531(B)(7) was amended in 2021 to extend the period from 60 days to 75 days.

3

On December 10, 2020, the City filed a notice of appeal with the district court from the Board's December 9, 2020 ruling. It heard the matter on June 30, 2021. It concluded that the Board acted in good faith for cause on the 60-day issue as the second termination was imposed beyond the 60-day limit in La. R.S. 40:2531(B)(7). The district court also found that the unpaid leave was the initial discipline and the only discipline that could be rendered by the SPD against Daughtrey under these circumstances. The court rendered judgment affirming the Board's ruling overturning Daughtrey's second termination.

The City separately appealed the judgments rendered by the district court. Those appeals have been consolidated.

## DISCUSSION

Any employee under classified service and any appointing authority may appeal from any decision of the Board, or from any action taken by the Board under the provisions of the Part that is prejudicial to the employee or appointing authority. This appeal shall lie direct to the court of original and unlimited jurisdiction in civil suits of the parish wherein the Board is domiciled. La. R.S. 33:2501(E)(1).

Review by the district court shall be confined to the determination of whether the decision made by the Board was made in good faith for cause under the provisions of this Part. No appeal to the court shall be taken except upon these grounds and except as provided in Subsection D of this Section. La. R.S. 33:2501(E)(3).

The Board's decision will not be overturned unless it is manifestly erroneous or arbitrary and capricious. *McCoy v. City of Shreveport*, 42,662 (La. App. 2 Cir. 12/5/07), 972 So. 2d 1178.

4

La. R.S. 40:2531(B) contains the minimum standards which must be followed when a police officer faces an administrative investigation which could result in possible disciplinary action, demotion, or dismissal. These standards are otherwise known as the Police Officer Bill of Rights. *City of Shreveport v. Shreveport Municipal Fire*, 52,838 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1154.

Any discipline, demotion, dismissal, or adverse action of any sort whatsoever taken against a police employee or law enforcement officer without complete compliance with the foregoing minimum standards is an absolute nullity. La. R.S. 40:2531(C).

In its appeal of the first judgment, the City argues that the district court erred in: (1) finding the unpaid leave was discipline such that the first termination was an impermissible second disciplinary action; (2) determining the Board's reversal of Daughtrey's termination was made in good faith for cause; and (3) reinstating his unpaid leave.

In its second appeal, the City argues that the district court erred in finding: (1) the second termination was a second disciplinary action for a single offense, and (2) the Board acted in good faith for cause when it determined that the second termination violated La. R.S. 40:2531.

The City contends that the Board's own rule establishes that unpaid leave is not a disciplinary action if there is a possibility that the employee *may* be indicted for a crime. The City notes Chief Raymond was still considering criminal charges against Daughtrey at the time that he was placed on unpaid leave. We disagree with the City's interpretation of the rule in question.

5

Each Board may adopt and execute rules, regulations, and orders necessary or desirable effectively to carry out the provisions of the Municipal Fire and Police Civil Service Law and shall do so when expressly required by it. La. R.S. 33:2478. Rules adopted under the authority of that section shall have the force and effect of law. *Id.*

La. R.S. 33:2497 directs the Board to adopt rules to provide for leaves of absence in the various classes of the classified service. Such rules shall provide for annual vacation and sick leave with pay and special leave with or without pay. *Id.*

Subpart C, Section 7 of the Board's Rules and Regulations sets forth what SPD is to follow when placing an officer on departmental leave. It states:

**Subpart C - Leaves of Absence**
. . . . .
**Section 7. Departmental Leave**

(a) The purpose of these rules is to make provision for the possibility that a classified employee may be indicted for a crime. As used herein, the term "indictment" is intended to include not only formal indictment by a grand jury but also a bill of information or other procedure instituting a criminal prosecution and filed by a law enforcement official.

(b) When an employee is charged with a felony he shall, and if a misdemeanor he may, be immediately relieved of duty and placed on "departmental leave" for up to one week at full pay and with continuing seniority. This "automatic" one week leave has these purposes:
(1) It will allow the employee some time to help his family adjust to the situation, to investigate the charges, to employ an attorney and, hopefully, get the charges dropped or dismissed if he can demonstrate to the proper authorities that they should be dropped or dismissed.
(2) It will serve to reassure the people of Shreveport that a criminal matter involving one of their public safety officers is under control and being handled expeditiously.
(3) It will allow the appointing authority time to have the matter investigated carefully and deliberately before he has to decide how best to handle it over the long term. It will also permit his

6

long-term decision to be made out of the immediate context of the publicity that usually results from such indictments.

(4) By operating "automatically" this procedure should minimize any prejudicial effect on the criminal proceeding that special personnel action might otherwise have at the time of the indictment itself.

(c) The following factors should be considered in arriving at an appropriate course of action in this type of situation:

(1) First consideration should be given to the best interest of the people of Shreveport, because the fire and police services exist to protect the public, and the appointing authority is charged with responsibility for assuring the effectiveness and continuity of that protection.

(2) Due consideration must also be given, however, to the employee's right to be presumed innocent until proven guilty, because an indictment is only an accusation and not proof of guilt.

(3) Although an employee may not be "disciplined" just because he has been "indicted," he may be subject to disciplinary action, including termination in a proper case, on the basis of facts out of which the indictment arose.

(4) The maximum disciplinary suspension period permitted by law (presently 90 days) may expire before trial on the criminal charges can he had.

(5) It is possible that some kind of action other than "disciplinary" may be required by the public interest if the fact that an officer is under indictment impairs his effectiveness to function in his official capacity under the circumstances of a particular case.

(6) Ultimate conviction, or a guilty or no contest plea, may justify disciplinary action in and of itself, depending upon the circumstances of a particular case.

(d) Nothing herein is intended to restrict or limit the appointing authority's management of the fire and police departments as he determines to be in the public interest in the exercise of his executive responsibilities under applicable laws. In the case of an indicted employee, the following personnel actions may be in the public interest:

(1) If the facts warrant immediate disciplinary action, the employee may be terminated or suspended for up to the maximum period permitted by law. If the criminal charges are still pending at the end of a disciplinary suspension period, some other non-disciplinary action may then be required by the public interest depending upon the circumstances and public attitudes in a particular case.

(2) A decision on disciplinary action may be deferred until after the criminal charges have been resolved, either because it is felt that to proceed under the Municipal Fire and Police Civil Service Law might prejudice the criminal trial or because for

7

some other reason the appointing authority considers this course of action to be in the public interest. In this case, again, some kind of non-disciplinary action may be necessary in the public interest while the criminal charges are pending.

(3) An employee not under disciplinary suspension but still under indictment may be returned to his regular duties pending resolution of the criminal charges, but only if the appointing authority determines that he can function effectively in his official capacity under the circumstances. Alternatively, such employee may be assigned to special duties that he can effectively perform until the criminal charges are resolved, in which case he would normally continue to draw his regular pay. However, if the nature of the charges and the impact of resulting publicity on the general public are such as to make it necessary in the public interest that the employee be relieved of duty while under indictment, the employee may be placed on "extended departmental leave" until the criminal proceedings have been resolved.

On such a leave the employee may draw full pay, reduced pay or no pay as the appointing authority may determine to be appropriate from time to time under the facts and circumstances of the particular case. Such a leave, being required in the public interest, shall not be considered "disciplinary action" against the employee, and seniority will continue to accrue during the leave.

Civil Service rules must be construed according to the rules of interpretation applicable to legislation. *King v. LSU Health Sciences Center*, 03-1138 (La. App. 1 Cir. 4/2/04), 878 So. 2d 544.

Regarding the interpretation of statutes, the Louisiana Supreme Court stated in *M.J. Farms, Ltd. v. Exxon Mobil Corp.*, 07-2371, p. 13 (La. 7/1/08), 998 So. 2d 16, 27:

The starting point in the interpretation of any statute is the language of the statute itself. "When a law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature." However, "when the language of the law is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law." Moreover, "when the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole."

8

Citations omitted.

However, we are mindful that Section 7 is essentially a penal rule as it presents the possibility of deprivation of property. Under the rule of lenity, where there is any doubt as to the interpretation of a criminal or civil penal statute, including the penalties imposed by those statutes, any doubt in the construction of a penal statute must be resolved with lenity and in favor of the person subject to the fine or penalty. *Bd. of Ethics in Matter of Cartesian Company, Inc.*, 16-1556 (La. App. 1 Cir. 10/12/17), 233 So. 3d 9; *Ellis v. Louisiana Bd. of Ethics*, 14-0112 (La. App. 1st Cir. 12/30/14), 168 So. 3d 714, *writ denied*, 15-0208 (La. 4/17/15), 168 So. 3d 400.

As stated by the Louisiana Supreme Court in *Gibbs Const. Co., Inc. v. State, Dept. of Labor*, 540 So. 2d 268, 269 (La. 1989):

> [S]tatutes which authorize the imposition of a penalty are to be strictly construed. We will not construe penal statutes as extending powers not authorized by the letter of the law even if such powers would be arguably within its spirit. We have specifically applied this rule in the area of administrative law.

Section 7 concludes with a paragraph ("paragraph at issue") containing the statement that "[s]uch a leave, being required in the public interest, shall not be considered 'disciplinary action' against the employee[.]" We interpret this paragraph as not being a standalone provision, but rather as applying to subsection (d) only. If it were to apply to subsections (a) to (c) as well, then subsections (a) to (d) would be numbered as subsections (a) to (d) under a paragraph (1) and the paragraph at issue would be a standalone paragraph under a paragraph (2). Furthermore, the paragraph at issue begins by stating, "On such a leave the employee may draw full pay, reduced pay or no pay . . . ." This would obviously not apply

9

to subsection (b), which references an employee being placed on leave for up to one week at full pay following being charged with a crime.

Now that we have determined that the paragraph at issue applies to subsection (d) only, we must next determine whether the City was proceeding under subsection (d) when it placed Daughtrey on unpaid leave. Our reading of subsection (d) is that it is triggered only after an officer is indicted. Subsection (d) is reproduced below with our emphasis added:

> (d) Nothing herein is intended to restrict or limit the appointing authority's management of the fire and police departments as he determines to be in the public interest in the exercise of his executive responsibilities under applicable laws. *In the case of an indicted employee*, the following personnel actions may be in the public interest:
> (1) If the facts warrant immediate disciplinary action, the employee may be terminated or suspended for up to the maximum period permitted by law. *If the criminal charges are still pending* at the end of a disciplinary suspension period, some other non-disciplinary action may then be required by the public interest depending upon the circumstances and public attitudes in a particular case.
> (2) A decision on disciplinary action may be deferred until *after the criminal charges have been resolved*, either because it is felt that to proceed under the Municipal Fire and Police Civil Service Law might prejudice the criminal trial or because for some other reason the appointing authority considers this course of action to be in the public interest. In this case, again, some kind of non-disciplinary action may be necessary in the public interest *while the criminal charges are pending*.
> (3) An employee not under disciplinary suspension but still *under indictment* may be returned to his regular duties *pending resolution of the criminal charges*, but only if the appointing authority determines that he can function effectively in his official capacity under the circumstances. Alternatively, such employee may be assigned to special duties that he can effectively perform *until the criminal charges are resolved*, in which case he would normally continue to draw his regular pay. However, if the *nature of the charges* and the impact of resulting publicity on the general public are such as to make it necessary in the public interest that the employee be relieved of duty *while under indictment*, the employee may be placed on "extended departmental leave" *until the criminal proceedings have been resolved*.

Section 7 presents a broad definition of indictment to include even a "procedure instituting a criminal prosecution and filed by a law enforcement official." Nevertheless, no criminal prosecution was ever instituted against Daughtrey. The consideration of criminal charges is not an indictment as contemplated by Section 7. As such, his placement on unpaid leave was not under subsection (d) of Section 7. Therefore, it would be considered disciplinary action.

Suspension without pay is a disciplinary action. See La. R.S. 33:2500(B). The City contends that suspension without pay under Section 7 is not a suspension because the paragraph at issue provides that seniority will accrue. This contention is without merit as the paragraph at issue is not applicable in this matter since its application is limited to subsection (d).

The result would be the same even if Section 7 were not strictly construed and the paragraph at issue applied to Section 7 in its entirety. The only part of Section 7 in which the possibility of indictment instead of an actual indictment is mentioned is in the opening sentence of subsection (a): "The purpose of these rules is to make provision for the possibility that a classified employee may be indicted for a crime." In contrast, throughout other subsections of Section 7 are references to an indictment that has already occurred. We again note the broad definition given to indictment in Section 7.

Subsection (b) gives the SPD the authority to place an officer on leave with pay for a week after the officer is charged with a crime. It reads, with our emphasis:

> (b) When an employee is *charged with a felony* he shall, and *if a misdemeanor* he may, be immediately relieved of duty and placed on "departmental leave" for up to one week at full pay

11

and with continuing seniority. This "automatic" one week leave has these purposes:

(1) It will allow the employee some time to help his family adjust to the situation, to *investigate the charges . . . get the charges dropped or dismissed* if he can demonstrate to the proper authorities that they should be dropped or dismissed.
. . . . .
(4) By operating "automatically" this procedure should minimize any prejudicial effect on the *criminal proceeding* that special personnel action might otherwise have at the time of the *indictment* itself.

Subsection (c) offers guidance to the City when an officer has been charged with a crime. It states, with our emphasis added:

(c) The following factors should be considered in arriving at an appropriate course of action in this type of situation:
. . . . .
(2) Due consideration must also be given, however, to the employee's right to be presumed innocent until proven guilty, because an *indictment* is only an accusation and not proof of guilt.
(3) Although an employee may not be "disciplined" just because he has been "*indicted*," he may be subject to disciplinary action, including termination in a proper case, on the basis of facts out of which the *indictment* arose.
(4) The maximum disciplinary suspension period permitted by law (presently 90 days) may expire before trial on the *criminal charges* can he had.
(5) It is possible that some kind of action other than "disciplinary" may be required by the public interest if the fact that an officer is under *indictment* impairs his effectiveness . . . .
(6) Ultimate *conviction*, or a *guilty or no contest plea*, may justify disciplinary action in and of itself, depending upon the circumstances of a particular case.

The City argues in the alternative that even if the placement of Daughtrey on leave without pay was a disciplinary action, this action was done contrary to the minimum standards found in La. R.S. 40:2531(B), making his placement on unpaid leave an absolute nullity regardless of whether an appeal was filed regarding this action. The City further argues that with the initial discipline being an absolute nullity and considered never to have occurred, the City was placed in the same position it had been in on

May 26, 2020, and free to initiate proceedings to terminate Daughtrey as the initial disciplinary action.

The City maintains that it is well settled that a judgment or order that is an absolute nullity may be challenged at any time. However, what is being attacked by the City is not a court judgment or order, but an action taken by a party, the City itself, that was later ratified then revoked by the Board. *See Johnson v. Louisiana Dept. of Public Safety and Corrections*, 19-1244 (La. App. 1 Cir. 5/11/20), 304 So. 3d 426, *writ denied*, 20-00839 (La. 12/8/20), 306 So. 3d 435 (where the appellate court noted that the plaintiff was not attempting to nullify a judgment of a court in the judicial branch, but instead was attempting to have the judicial branch nullify a final disciplinary action of a department of the executive branch).

The Board ruled at the September hearing that the SPD failed to meet the minimum standards, which made the process an absolute nullity. This was based on the SPD placing Daughtrey and the other officers on unpaid leave without notice or a predisciplinary conference. However, the City cannot benefit from its own failure in denying Daughtrey the minimum standards guaranteed to him under La. R.S. 40:2531. The minimum standards set forth in the Police Officer Bill of Rights, as well as the nullification clause within La. R.S. 40:2531, are for the benefit of officers, not to give the appointing authority a second chance after it fails to protect an officer's rights when seeking to discipline an officer.

For support of its argument that subsequent discipline is allowed when earlier discipline is declared an absolute nullity, the City cites *Ouachita Parish Police Jury v. Ouachita Parish Fire Protection Dist. No. 1 Civil*

13

*Service Bd.*, 46,480, pp. 6-7 (La. App. 2 Cir. 9/21/11), 72 So. 3d 987, 992, where this Court stated:

> Since the police jury did not comply with La. R.S. 33:2181, the disciplinary actions taken against Odom are absolutely null and deemed to never have existed. However, after a careful review of La. R.S. 33:2181, et seq., also known as the Firefighters Bill of Rights, we fail to find any provision prohibiting the police jury from reinstituting an investigation of this matter. Additionally, since this case involves a civil matter, a new investigation regarding Odom's conduct would not constitute double jeopardy. Chief Hemphill can initiate a second investigation regarding Odom's actions.

Citations omitted.

*Ouachita Parish* can be easily distinguished from the matter at hand. The fire captain, who was originally placed on administrative leave with pay, appealed his termination to the civil service board, which overturned his termination. In contrast, Daughtrey accepted his original discipline of unpaid leave. In his appeal letter to the Board, Daughtrey argued that he was already disciplined when he was placed on unpaid leave, and he could not be punished a second time for the same offense. He also argued for reversal of his termination on the grounds that the investigation and termination were done in violation of La. R.S. 40:2531(B).

Daughtrey's attorney clearly stated numerous times at the September 9 hearing that Daughtrey was not appealing the unpaid suspension but was appealing the termination. Taking the position that the termination was an absolute nullity, Daughtrey's counsel sought reinstatement from the Board with back pay to the date of termination, not the date that he was placed on unpaid leave. The City contended at that hearing that arguments concerning the notice for leave without pay and whether leave without pay was a proper disciplinary action could not be raised before the Board because Daughtrey

14

had not timely appealed after the City placed him on unpaid leave. More specifically, counsel for the City told the Board that "any issues concerning the Bill of Rights, leave without pay should not be heard by this Board, should not be ruled on by this Board, because they did not appeal. All they appealed was the termination." The City's alterative argument is without merit.

Because the placement of Daughtrey on unpaid leave was a disciplinary action, the subsequent terminations were impermissible additional disciplinary actions for the same offense. The trial court did not err in upholding the Board's reversals of the two terminations.

## CONCLUSION

For the foregoing reasons, the judgments are affirmed. Appeal costs of $6,034.61 are assessed to the City of Shreveport.

**AFFIRMED.**

15