STATE OF LOUISIANA

COURT OF APPEAL

FIRST CIRCUIT

NO. 2023 CA 0564

LOUISIANA WETLANDS, LLC,
AND NEW 90, LLC

VERSUS

ENERGEN RESOURCES CORPORATION,
CHEVRON USA, INC.,
SOUTHERN NATURAL GAS COMPANY, LLC,
EP ENERGY E&P COMPANY, LP,
AND BRAMMER ENGINEERING, INC.

Judgment Rendered: __APR 1 9 2024__

* * * * *

On Appeal from the
16th Judicial District Court
Parish of St. Mary, State of Louisiana
Trial Court No. 130527

The Honorable Suzanne deMahy, Judge Presiding

* * * * *

James R. Swanson                        Attorneys for Plaintiff-Appellant,
H.S. Bartlett, III                      James J. Bailey, III, Individually and as
Lance C. McCardle                       Representative of the Successions
E. Blair Schilling                      of Willie Palfrey Foster and
New Orleans, Louisiana                  Fairfax Foster Bailey

Gladstone N. Jones, III
Bernard E. Boudreaux
Kevin E. Huddell
Michael P. Arata
John T. Arnold
Rosa E. Acheson
Alayne Gobielle
Harvey S. Bartlett, III
New Orleans, Louisiana

George Arceneaux, III
Jamie D. Rhymes
Court C. VanTassell
John S. Troutman
Randee V. Iles
Lafayette, Louisiana

Kelly Brechtel Becker
Mark R. Deethardt
Erin E.Bambrick
Trinity A. Morale
New Orleans, Louisiana

Michael P. Cash
Houston, Texas

Attorneys for Defendant-Appellee,
BP America Production Company

\* \* \* \* \*


BEFORE:  WELCH, WOLFE, AND STROMBERG, JJ.

**WOLFE, J.**

In this oil and gas contamination lawsuit,[1] plaintiff, James J. Bailey, III, individually and as the representative of the Successions of Willie Palfrey Foster and Fairfax Foster Bailey, appeals a summary judgment granted in favor of one of the named defendants, BP America Production Company, and dismissing all of Mr. Bailey's claims against BP America with prejudice. BP America answered the appeal, seeking a clarification of the trial court's reasons for judgment. For the following reasons, we affirm the trial court's judgment and deny the answer to appeal as moot.

## FACTS AND PROCEDURAL HISTORY

The original plaintiffs in this case were New 90, LLC, and Louisiana Wetlands, LLC. However, Louisiana Wetlands was later removed and James J. Bailey, III (Mr. Bailey) was added as a new party plaintiff, both individually and in his capacity as the representative of his mother's and grandmother's successions.[2] All claims of New 90, LLC were dismissed through summary judgment, leaving Mr. Bailey as the sole plaintiff in his individual and representative capacity for the Bailey family. See **Louisiana Wetlands, LLC v. Energen Resources Corporation**, 2021-0290 (La. App. 1st Cir. 10/4/21), 330 So.3d 674, 680, writ denied, 2021-01610 (La. 1/12/22), 330 So.3d 674. In prior appeals, we have provided a detailed factual and procedural history of the underlying oil and gas activities and contamination issues on the Bailey family property. See **Id.** at 676-678 (**Louisiana Wetlands I**). See also **Louisiana Wetlands, LLC v. Energen Resources Corporation**, 2022-1169

---

[1] These types of cases are also known as "legacy" lawsuits, because they often arise from oil and gas operations conducted many decades ago, leaving an unwanted legacy in the form of actual or alleged contamination. See **Louisiana Wetlands, LLC v. Energen Resources Corporation**, 2021-0290 (La. App. 1st Cir. 10/4/21), 330 So.3d 674, 676 n.1, writ denied, 2021-01610 (La. 1/12/22), 330 So.3d 674.

[2] Throughout the opinion, we reference Mr. Bailey and sometimes the Bailey family to represent the plaintiff's position.

(La. App. 1st Cir. 11/30/23), ___ So.3d ___, 2023 WL 8290245, **1-2, writ denied, 2024-00004 (La. 2027/24), ___ So.3d ___, 2024 WL 806006. (**Louisiana Wetlands II**). We repeat only the pertinent facts to the appeal currently before us, which will hereafter be referred to as **Louisiana Wetlands III**.

For over 100 years, the Bailey family has owned a 300-acre tract of land known as the Shady Retreat Plantation, near the Town of Franklin in St. Mary Parish. The property has been passed down through the Bailey family for generations. It is undisputed that oil and gas exploration and production activities were historically conducted on various areas of the Bailey property, pursuant to a 1948 mineral lease entered into between Mr. Bailey's family as lessors and Pan-American Production Company as lessee. Pursuant to partial assignments beginning in 1952, three production companies, BP America, Chevron U.S.A., Inc., and Southern Natural Gas Company, L.L.C. (SNG), were each a successor to Pan-American's lessee interest in the 1948 lease. By 1973, all wells that were drilled and operated under the 1948 lease had been plugged and abandoned. In 1975, the Bailey family entered into two more leases for hydrocarbon production on their property. Energen Resources Corporation is the successor to the 1975 leases; however, all operations pursuant to the 1975 leases were terminated in July 2000, when the last two operating wells were plugged and abandoned.

This lawsuit was initially filed in December 2016 by the Bailey family, through their limited liability companies, asserting tort and contract claims against all of the oil and gas lessees who operated at various times throughout the property's history of oil and gas production. The Bailey family sought damages arising from the historical oil and gas exploration and production activities on their property, alleging environmental damage to their property, and additionally seeking to have their contaminated property cleaned and restored to its original condition.

4

This appeal concerns a summary judgment that was granted in favor of BP America on August 29, 2022.[3] The trial court dismissed Mr. Bailey's claims for damages caused by BP America's alleged unreasonable and excessive operations, which the trial court ruled were implied obligations that sounded in tort instead of contract. Because the trial court had previously dismissed all of Mr. Bailey's tort claims against BP America as being prescribed,[4] the trial court found that the claims for unreasonable and excessive operations should also be dismissed as prescribed. Now, Mr. Bailey assigns error to the trial court's holding that his claims for breach of implied obligations contained in the 1948 lease are tort claims that have prescribed.

BP America filed an answer to this appeal, urging this court to affirm the trial court's judgment for another reason – that Mr. Bailey's claims for excess remediation damages are barred under La. R.S. 30:29, more commonly known as "Act 312,"[5] as interpreted by the Louisiana Supreme Court in **State v. Louisiana Land & Exploration Co.**, 2020-00685 (La. 6/30/21), 347 So.3d 684, 693 (hereafter referred to as **LL&E II**). BP America argues that, when there is no express contractual provision, Act 312 does not allow for remediation damages in excess of those required to fund the most feasible plan adopted by the trial court.

---

[3] The trial court signed two judgments concerning BP America's motion for summary judgment: (1) August 29, 2022 judgment deciding the merits of BP America's motion, as well as the merits of related motions by Chevron and SNG; and (2) August 30, 2022 judgment dismissing all claims against BP America. In this appeal, we review the first judgment signed on August 29, 2022, where the trial court granted summary judgment in favor of BP America and dismissed Mr. Bailey's damage claims against BP America for unreasonable and excessive operations. Further, we note that the order of appeal references the August 29, 2022 judgment, not the August 30, 2022 judgment.

[4] This court denied supervisory review of that prior prescription ruling in an unpublished writ action. See **Louisiana Wetlands, LLC v. Energen Resources Corporation**, 2022-0739 (La. App. 1st Cir. 9/1/22), 2022 WL 4087994, *1 (unpublished), writ denied, 2022-01495 (La. 12/20/22), 352 So.3d 88.

[5] Louisiana Revised Statutes 30:29, referred to as Act 312 herein, has a stated legislative purpose of ensuring that damage to the environment is remediated to a standard that protects the public interest. Because this case involves environmental damage arising from oil and gas activities, Act 312 applies.

5

Pertinent to this appeal, it is important to note that in August and September of 2020, SNG and Chevron filed limited admissions of liability with the trial court, each admitting to being a responsible party for the environmental damage on the Bailey property. As a result, the trial court referred the matter to the Louisiana Department of Natural Resources, Office of Conservation (LDNR) for a determination of the most feasible plan (MFP) for remediation of the Bailey property to applicable regulatory standards as mandated by Act 312.[6] After the MFP was adopted, LDNR submitted the MFP to the trial court, which was accepted and adopted by the trial court in a judgment dated July 15, 2022. SNG and Chevron submitted the funds necessary to implement the MFP into the registry of the trial court, and this court affirmed the trial court's judgment adopting the MFP. The Louisiana Supreme Court denied writs on February 27, 2024. <u>See</u> **Louisiana Wetlands II**, 2023 WL 8290245 at *4.

The issue currently before this court is whether the trial court correctly granted summary judgment in favor of BP America and dismissed Mr. Bailey's sole remaining claim against BP America for unreasonable and excessive operations based upon implied lease obligations under the 1948 lease. We review this issue in light of the undisputed facts that BP America never actually drilled or operated any wells on the Bailey property, and SNG and Chevron have admitted responsibility for remediation of the Bailey property according to the court-approved MFP.

## STANDARD OF REVIEW

Appellate courts review summary judgments *de novo*, using the same criteria that govern the trial court's determination of whether summary judgment is appropriate; *i.e.*, whether there is any genuine issue of material fact, and whether the

---

[6] By 2023 La. Acts No. 150, § 5, effective January 10, 2024, La. R.S. 30:29 was amended and reenacted to rename LDNR to "Louisiana Department of Energy and Natural Resources, [O]ffice of [C]onservation." However, in this opinion, we will continue to use "LDNR" to refer to the department.

movant is entitled to judgment as a matter of law. La. Code Civ. P. art. 966(A)(3); **Louisiana Wetlands I**, 330 So.3d at 678. In ruling on a motion for summary judgment, the trial court's role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Further, simply showing the presence of disputed facts is insufficient if there is no legal issue presented by those contested facts. **Sketchler v. Hernandez**, 2020-0292 (La. App. 1st Cir. 5/19/21), 326 So.3d 912, 916 n.3.

Because it is the applicable substantive law that determines materiality, whether a particular fact in dispute is material can be seen only in light of the substantive law applicable to the case. **Louisiana Wetlands I**, 330 So.3d at 678. This oilfield remediation case is governed by the substantive law found in Act 312, which the Louisiana Supreme Court has interpreted in the context of prescription issues and awards of damages for the remediation of contaminated property. See **LL&E II**, 347 So.3d at 688-693 and **State v. Louisiana Land & Exploration Co.**, 2020-00685 (La. 6/1/22), 339 So.3d 1163, 1168-1171 (**LL&E III**).

## LAW AND ANALYSIS

In 2006, the Louisiana Legislature passed Act 312, which was designed to protect the public interest in litigation by requiring court-supervised, defendant-funded cleanup for all environmental damage claims resulting from oilfield operations. However, Act 312 specifically provides that it shall not be construed to impede or limit provisions in private contracts imposing remediation obligations in excess of regulatory requirements. See La. R.S. 30:29(H)(1). See **Marin v. Exxon Mobil Corp.**, 2009-2368 (La. 10/19/10), 48 So.3d 234, 241 n.7. Additionally, damages awarded pursuant to Act 312 are governed by Subsection M, which shall not be interpreted to create any cause of action or to impose additional implied obligations under the mineral code or arising out of the mineral lease. See La. R.S. 30:29(H)(2).

7

The rules of statutory construction provide that when the words of a statute are clear and unambiguous, and the application of the law does not lead to absurd consequences, the statute should be applied as written and no further effort should be made to determine the legislature's intent. See La. Civ. Code art. 9; see also La. R.S. 1:4. Thus, the starting point in the interpretation of any statute is examining the language of the statute itself. When the language is susceptible of different meanings, it must be interpreted as having the meaning that best conforms to the purpose of the law. **M.J. Farms, Ltd. v. Exxon Mobil Corp.**, 2007-2371 (La. 7/1/08), 998 So.2d 16, 27. Also, if the words of a law are ambiguous, their meaning must be sought by examining the context in which they occur and the text of the law as a whole. **Id.**

As originally written, Act 312, Subsection D, mandated that all damages awarded in connection with the statute, except those described in Subsection H, must be deposited into the registry of the court and used to remediate the property. In **Marin**, 48 So.3d at 259-260, the supreme court held that in situations where the lessee acts unreasonably or excessively, the lessee has an obligation to correct the damage to state regulatory standards rather than restore to the land's original condition.

In 2013, the Louisiana Supreme Court decided **State v. Louisiana Land & Exploration Co.**, 2012-0884 (La. 1/30/13), 110 So.3d 1038 (**LL&E I**), ultimately allowing for remediation damages in excess of those needed to satisfy state regulatory standards, even in the absence of an express contractual provision. **LL&E I**, 110 So.3d at 1054. Further, the plaintiff could keep those excess damages without any requirement that they be deposited into the court registry. **Id.** In 2014, immediately after the supreme court's decision in **LL&E I**, the legislature amended the private damage provisions of Act 312, Subsection H, to limit a plaintiff's private

8

damages for remediation to those available under Subsection M, which specifically provides that damages may be awarded *only* for the following:

(a) The cost of funding the [MFP] adopted by the court.

(b) The cost of **additional remediation only if required by an express contractual provision** providing for remediation to original condition or to some other specific remediation standard.

(c) The cost of evaluating, correcting or repairing environmental damage upon **a showing that such damage was caused by unreasonable or excessive operations based on rules, regulations, lease terms and implied lease obligations** arising by operation of law, or standards applicable at the time of the activity complained of, **provided that such damage is not duplicative** of damages awarded under Subparagraph (a) or (b) of this Paragraph.

(d) The cost of nonremediation damages.

La. R.S. 30:29(M)(1)(a-d) (emphasis added).

A well-settled rule of Louisiana statutory interpretation instructs courts to presume a change in the law when the legislature changes the statute's language. **New Orleans Rosenbush Claims Service, Inc. v. City of New Orleans**, 94-2223 (La. 4/10/95), 653 So.2d 538, 544. The unambiguous effect of the 2014 amendments to Act 312 was to limit a plaintiff's recovery, in that a plaintiff cannot directly recover additional remediation damages in the absence of an express contractual provision. Furthermore, this interpretation best conforms to the language in the opening subsection of Act 312, which explicitly provides: "The provisions of this section shall not be construed to impede or limit provisions under private contracts imposing remediation obligations in excess of the requirements of [LDNR] or limit the right of a party to a private contract to enforce any contract provision in a court of proper jurisdiction." La. R.S. 30:29(A). In **LL&E II**, 347 So.3d at 691, the supreme court recognized the "palpable error" in **LL&E I**, by examining the plain language of Act 312 as cured by the legislature's 2014 amendment to Subsection M. See **LL&E II**, 347 So.3d at 691, n.5.

Given the mandate that Act 312 limits direct damages (those that need not be deposited into the court's registry) to those described in Subsection M(b) for "additional remediation" when a contractual provision explicitly compels that result, we next examine the language of the 1948 lease. Our *de novo* review of the 1948 lease reveals no express language providing for remediation to original condition or to any other specific remediation standard. However, Mr. Bailey's petition specifically requests damages in an amount including "payment of the costs to restore ... lands ... to its original unpolluted state[.]" Further, it is undisputed that BP America did not actually drill or operate any of the wells that were authorized under the 1948 lease, which is the only lease that could possibly affect Mr. Bailey's recovery against BP America as one of the successor's in interest to the original lessee, Pan-American.

The thrust of Mr. Bailey's argument is that BP America acted unreasonably or excessively, thereby breaching implied obligations arising under the Louisiana Civil and Mineral Codes and allowing recovery under Act 312 Subsection M(c). However, because the 1948 lease does not contain any express provision for additional remediation or a requirement that the Bailey family's property be restored to its original condition, Mr. Bailey has no viable claim against BP America for a breach of implied obligations. Furthermore, Chevron and SNG have filed limited admissions of liability in this case. LDNR submitted the MFP that has been approved, adopted, and affirmed. The MFP has been funded by Chevron and SNG. Therefore, we find that the trial court did not err in granting summary judgment in favor of BP America and dismissing Mr. Bailey's claims for breach of implied obligations against BP America. Our *de novo* review reveals BP America is entitled to summary judgment as a matter of law.

10

## ANSWER TO APPEAL

BP America filed an answer to Mr. Bailey's appeal, requesting this court to affirm the August 29, 2022 judgment of the trial court on the basis that Mr. Bailey's claims for excess remediation damages are barred under Act 312, as interpreted by the Louisiana Supreme Court in **LL&E II**. BP America makes this request in light of the trial court's reasons for judgment wherein the trial court opined that **LL&E II** applied only to the 2006 version of Act 312, not the 2014 version. We note that a judgment and reasons for judgment are separate and distinct and that appeals are taken from the judgment, not the written or oral reasons for judgment. **Harris v. Breaud**, 2017-0421 (La. App. 1st Cir. 2/27/18), 243 So.3d 572, 577. Appellate courts review judgments and, where the appellate court believes that the trial court reached the proper result, the judgment will be affirmed. **Id.** Thus, our review is limited to the actual judgment signed by the trial court. Considering our extensive discussion interpreting and applying the 2014 amendment of Act 312, we find that the relief sought in BP America's answer to this appeal should be denied as moot. See **Cook v. Rigby**, 2019-1475 (La. App. 1st Cir. 11/25/20), 316 So.3d 482, 488, writ denied, 2020-01493 (La. 3/9/21), 312 So.3d 588.

## CONCLUSION

For the assigned reasons, we deny BP America Production Company's answer to this appeal as moot. We hereby affirm the trial court's August 29, 2022 judgment granting summary judgment in favor of BP America Production Company and dismissing all claims of James J. Bailey, III, individually and as the representative of the Successions of Willie Palfrey Foster and Fairfax Foster Bailey, against BP America Production Company. All costs of this appeal are assessed to James J. Bailey, III, individually and as the representative of the Successions of Willie Palfrey Foster and Fairfax Foster Bailey.

**AFFIRMED; ANSWER TO APPEAL DENIED AS MOOT.**

11

LOUISIANA WETLANDS, LLC AND NEW 90, LLC

NUMBER: 2023 CA 0564

VERSUS

FIRST CIRCUIT

ENERGEN RESOURCES CORPORATION, CHEVRON USA, INC., SOUTHERN NATURAL GAS, LLC, EP ENERGY E&P COMPANY, LP, AND BRAMMER ENGINEERING

COURT OF APPEAL

STATE OF LOUISIANA

*JCW*

**WELCH, J., dissenting.**

I respectfully disagree with the majority's decision to affirm the trial court's summary judgment in favor of BP America, dismissing James Bailey's claims against BP America for unreasonable and excessive operations. Not only did the trial court inappropriately grant summary judgment on an issue that was not properly raised in BP's motion for summary judgment, but the majority's decision, on *de novo* review to affirm that summary judgment is legally incorrect and based on the improper interpretation of La. R.S. 30:29 (commonly referred to as "Act 312"), as amended, and the inappropriate use of a most feasible plan ("MFP") for remediation by a non-party to that MFP. Therefore, I would reverse the judgment of the trial court and remand to the trial court for further proceedings.

By way of factual background, the oil and gas operations on the Bailey family property that are at issue in this appeal were conducted pursuant to a 1948 lease by the Bailey family to Pan-American. BP, Chevron, and SNG were each a successor to Pan-American's lessee interest under the 1948 lease, but only Chevron and SNG conducted operations under the 1948 lease. Chevron and SNG admitted to limited liability under La. R.S. 30:29 for some—but not all—of the environmental damage to the property, and were referred to the Department of Natural Resources to create

an MFP. Chevron and SNG did not, however, admit to liability for any of the plaintiff's private claims. In addition, it should be noted that there is no written release by the Bailey family that would discharge Pan-American's (and therefore BP's) obligations as the original lessee under those assignments.

BP, in its motion for summary judgment that is at issue in this appeal, argued that because Mr. Bailey's remedies in excess of the MFP remediation must be premised under La. R.S. 30:29(M)(1)(c) for excessive and unreasonable operations, then the implied lease obligations against it should be dismissed because BP's predecessor, Pan-American, did not engage in any physical operations of its own prior to assignment to Chevron and SNG. However, the trial court did not address this issue and instead, granted summary judgment dismissing Mr. Bailey's remaining claims against BP on the basis that it had previously dismissed BP from all tort claims and that the claims with regard to damages caused by unreasonable or excessive operations were tort claims.

Louisiana Code of Civil Procedure article 966(F)(1) mandates that "summary judgment may be rendered or affirmed only as to those issues set forth in the motion for consideration by the trial court at that time." Furthermore, it is legal error for the trial court to grant summary judgment on the basis of an issue not raised by the parties. See **Rhodes v. AMKO Fence & Steel Co., L.L.C.**, 2021-0019 (La. App. 5th Cir. 10/28/21, 329 So.3d 1112, 1113; **Cutrone v. English Turn Property Owners Association, Inc.**, 2019-0896 (La. App. 4th Cir. 3/4/20), 293 So.3d 1209, 1218. Thus, the trial court herein legally erred in granting summary judgment on an in issue that was not raised in the motion for summary judgment. Nonetheless, despite the trial court's legal error in this regard, the standard of review on summary judgment requires this Court to conduct a *de novo* review of BP's motion for summary judgment and to determine whether there is any genuine issue of material fact and whether BP was entitled to judgment as a matter of law dismissing Mr.

2

Bailey's claims against it for breach of the implied lease obligation under the 1948 lease to not operate excessively and unreasonably. See **Libertas Tax Fun 1, LLC v. Laiche**, 2021-0330 (La. App. 1ˢᵗ Cir. 12/22/21), 340 So.3d 236, 242-243 n.6, writ denied, 2022-00160 (La. 4/12/22), 336 So.3d 82.

Louisiana Revised Statutes 30:29, as amended, provides, in pertinent part:

H. (1) This Section shall not preclude an owner of land from pursuing a judicial remedy or receiving a judicial award for private claims suffered as a result of environmental damage, except as otherwise provided in this Section. Any award granted in connection with the judgment for additional remediation in excess of the requirements of the feasible plan adopted by the court is not required to be paid into the registry of the court.

(2) Damages that may be awarded in an action under this Section shall be governed by the provisions of Subsection M of this Section. This Section shall not be interpreted to create any cause of action or to impose additional implied obligations under the mineral code or arising out of a mineral lease.

\* \* \*

M. (1) In an action governed by the provisions of this Section, damages may be awarded only for the following:

(a) The cost of funding the feasible plan adopted by the court.

(b) The cost of additional remediation only if required by an express contractual provision providing for remediation to original condition or to some other specific remediation standard.

(c) The cost of evaluating, correcting or repairing environmental damage upon a showing that such damage was caused by unreasonable or excessive operations based on rules, regulations, lease terms and implied lease obligations arising by operation of law, or standards applicable at the time of the activity complained of, provided that such damage is not duplicative of damages awarded under Subparagraph (a) or (b) of this Paragraph.

(d) The cost of nonremediation damages.

This statute is clear and unambiguous—La. R.S. 30:29(H) provides that damages may be awarded as per La. R.S. 30:29(M)(1), which lists them as: the regulatory level MFP (La. R.S. 30:29(M)(1)(a)), additional remediation pursuant to an express contractual provision (La. R.S. 30:29(M)(1)(b)), the cost of repairing

3

environmental damage caused by unreasonable and excessive operations *based on* *"implied lease obligations"* where not duplicative with the first two categories (La. R.S. 30:29(M)(1)(c)), and non-remediation damages (La. R.S. 30:29(M)(1)(d)).

In conducting its *de novo* review of BP's motion for summary judgment, the majority points out and relies, in large part, on the fact that SNG and Chevron admitted responsibility for remediation of the Bailey property according to the court-approved MFP and that BP never actually drilled or operated any wells on the Bailey property. The majority then concludes that, given the limit to private damages described in La. R.S. 30:29(M)(1)(b) for "additional remediation" when a contractual provision explicitly compels that result and absent any contractual provision in the 1948 lease for additional remediation or a requirement that the Baily family property be restored to its original condition, Mr. Bailey has no viable claim against BP for breach of implied obligations under La. 30:29(M)(1)(c). I find this conclusion erroneous—as Mr. Bailey's claim for damages under La. R.S. 30:29(M)(1)(c) is not duplicative of or based on a claim for damages under La. R.S. 30:29(M)(1)(b).

In addition, the majority has essentially determined that BP should not be liable on a contract claim for unreasonable and excessive operations because Pan-American did not itself engage in the operations under the 1948 lease, but such operations were only conducted by Pan-American's assignees, who admitted liability for some of the damages. This is likewise erroneous. There is no support for the majority's determination that implied obligations claims require that the damages be caused by the operations physically performed by the party found responsible. Rather, under La. R.S. 30:29(M)(1)(c), damages may be awarded for "[t]he cost of evaluating, correcting or repairing environmental damage upon a showing that such damage was caused by unreasonable or excessive operations ...." This statute does not require that those unreasonable or excessive operations be

4

performed by a particular party in order for the damages to be awarded. Indeed, La. R.S. 30:29(C)(1) contemplates any route to legal responsibility for those damages: "If at any time during the proceeding a party admits liability for environmental damage or the finder of fact determines that environmental damages exists and determined the party or parties who caused the damage **or who are otherwise legally responsible therefor ....**" (Emphasis added). Thus, this statute does not abrogate the standards of legal responsibility applicable to original lessees in the case of a subsequent assignment.

As to the fact that Chevron and SNG admitted limited liability under La. R.S. 30:29 (and La. C.C.P. art. 1563), and were referred to the LDNR to create a MFP, which was later adopted by the trial court, again it should be noted that Chevron and SNG admitted to liability for some—but not all—of the environmental damage, and they did not admit to liability for any of Mr. Bailey's private damage claims. While a party or parties may admit to liability for all or some of the damages claimed by a plaintiff, it logically follows that only those parties/claims are subject to the MFP, and that a non-party to a MFP cannot take advantage of that MFP, and further, that a plaintiff can still pursue private claims, or even those not covered by the MFP, to demonstrate that defendants are liable for damages not admitted to by a party. See **State v. Louisiana Land & Exploration Co.,** 298 So.3d 296; **Hero Lands Company, LLC v. Chevron USA, Inc.,** 2023 WL 3579049. Thus, the majority's reliance on Chevron and SNG's MFP, which admitted to liability for some, but not all of the environmental damage caused, is inappropriate, and to essentially hold that BP is should be dismissed because certain damages caused by those two parties is now governed by the MFP is incorrect as a matter of law.

Based on my *de novo* review of BP's motion for summary judgment, I find that BP failed to establish that it was entitled to judgment as a matter of law

dismissing Mr. Bailey's claims against it for breach of the implied lease obligation under the 1948 lease to not operate excessively and unreasonably.

Thus, I respectfully dissent.